**UNITED STATES of America,**

v.

**John C. BRIZENDINE, Charles M. Forsyth, James S. McDonnell, III, and Sherman Pruitt, Jr., Appellants.**

**No. 81–1196.**

United States Court of Appeals, District of Columbia Circuit.

Argued June 19, 1981.

Decided July 17, 1981.

Peter E. Fleming, Jr., New York City, was on the brief and argued for all appellants.

James H. Rowe, III, New York City, Charles B. Rosenberg, and Miles N. Ruthberg, Los Angeles, Cal., were on the brief for appellant Brizendine.

Seymour Glanzer and Kenneth L. Adams, Washington, D. C., were on the brief for appellant Forsyth.

John W. Vardaman, Jr. and David E. Kendall, Washington, D. C., were on the brief for appellant McDonnell.

John M. Bray and David J. Curtin, Washington, D. C., were on the brief for appellant Pruitt.

Robert J. Erickson, Atty., Dept. of Justice, Washington, D. C., of the bar of the Supreme Court of North Dakota, pro hac vice, by special leave of court, with whom George J. Mendelson and Michael A. Lubin, Attys., Dept. of Justice, Washington, D. C., were on the brief for appellee.

Before WRIGHT, WALD and MIKVA, Circuit Judges.

Opinion for the court filed by Circuit Judge J. SKELLY WRIGHT.

J. SKELLY WRIGHT, Circuit Judge:

To avoid the delays and inefficiencies of piecemeal litigation, 28 U.S.C. § 1291 (1976) limits appellate jurisdiction to "final decisions" of the District Courts. Although the statute has been judicially construed to allow interlocutory review of a small class of cases in which post-judgment review would be too late, the exceptions must be narrowly defined to preserve the vitality of the rule. We hold today that we lack jurisdiction to review appeals by defendants in criminal cases from the District Court's denial of their motions to dismiss the indictment on due process grounds relating to the plea bargaining process. We therefore do not reach the merits of the appellants' due process contentions.

## I. FACTS AND PROCEDURAL BACKGROUND

In October 1977, the Department of Justice initiated a grand jury investigation into the overseas sales practices of McDonnell Douglas Corporation (MDC). Preliminary plea negotiations between the government and counsel for MDC began in early 1979, while the investigation continued. Between January and May 1979, four individual officers of MDC, the appellants here, were informed that they were targets of the investigation. Counsel for MDC sought a settlement that would terminate the investigation with no indictments of individuals. The government expressed its willingness to discuss such a plea in April 1979, but at the end of that month suspended these negotiations in order to pursue a new development in the investigation. Plea negotiations resumed in August 1979. The line prosecutors prepared a proposed plea agreement, subject to the approval of Assistant Attorney General Philip Heymann. The proposed agreement provided that MDC would plead *nolo contendere* to one count of racketeering, 18 U.S.C. § 1962 (1976), plead guilty to four counts of making false statements to a federal agency, 18 U.S.C. § 1001 (1976), and incur a substantial forfeiture and monetary fines. In the proposed agreement, the government stated that, "based upon all information presently available," its "present intention" was to terminate the investigation and not to charge any past or present officers or employees of the corporation in connection with the matters under investigation.

On September 26, 1979, MDC Chairman J. S. McDonnell, accompanied by counsel, met with Justice Department attorneys to dis-

cuss the proposed agreement. Objecting strongly to the racketeering count, Chairman McDonnell rejected the agreement. Shortly thereafter, the four appellants, individual officers of MDC, were notified that the prosecutors would recommend indictments against them. After several weeks of further discussions between Justice Department attorneys and counsel for MDC and individual officers, the grand jury indicted the corporation and the four individuals on three counts of mail fraud, 18 U.S.C. § 1341 (1976), and two counts of wire fraud, 18 U.S.C. § 1343 (1976). In addition, the individuals were charged with one count of conspiracy, 18 U.S.C. § 371 (1976), and the corporation was charged with five counts of false statements to a government agency, 18 U.S.C. § 1001 (1976).

Appellants filed a motion to dismiss the indictments. First, they contended that the government had violated the requirements of *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978), by failing to disclose its intention to prosecute individuals if the corporation rejected the proposed plea agreement. Second, they asserted that the decision to indict individual officers, after the corporation had rejected the plea agreement, created an "impermissible appearance of prosecutorial vindictiveness" in violation of the Due Process Clause as construed in *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), and *Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974).[1] The motion was supported by an extensive memorandum of points and authorities, Joint Appendix (J.A.) at 24a–52a, five affidavits filed by counsel for the corporation and for individual defendants, J.A. at 53a–66a, and several documents relating to the proposed plea agreement, J.A. at 67a–81a.

In response, the government filed a detailed memorandum of factual and legal contentions, J.A. at 84a–131a, three affidavits by attorneys in the Justice Department, J.A. at 133a–138a, and materials related to plea negotiations in two partially analogous

cases, J.A. at 139a–169a. The government described defendant's motion as "a one-sided, substantially incomplete and misleading history of the investigation and plea negotiations." J.A. at 84a. It also took issue with the defendants' interpretations of governing case law. J.A. at 108a–122a. The defendants submitted a reply memorandum. J.A. at 170a–188a.

After studying the submissions of the parties, the District Court denied the defendants' motion to dismiss. J.A. at 189a–195a. Although it recognized the existence of factual disputes, the court found that, "[e]ven relying solely upon facts uncontroverted by defendants, there is no indication of prosecutorial misconduct warranting dismissal of the indictment." J.A. at 191a. Rejecting the contention of "vindictive prosecution," the court held that in the "arm's-length give and take" of the plea bargaining process, the prosecutor was free to indict on a more serious offense after the rejection of a proposed agreement, providing that the charge was supported by probable cause. J.A. at 192a. It noted that the defendants had not previously been indicted on any lesser charge, and that the indictments "unquestionably emerged logically from the grand jury investigation, which had long ago targeted [appellants]." *Id.*

Turning to the defendants' contention that *Bordenkircher v. Hayes, supra,* established a constitutional requirement that the government explicitly inform a defendant of the consequences of rejecting a plea, the court found no indication that such notice was required in all cases. *Bordenkircher* could be distinguished, the court reasoned, because the defendant there had already been indicted and had no reason to expect that the government would bring more serious charges based on the same conduct. In contrast, in this case, "defendants at the very least knew that indictment of individuals was a possibility, since they had been targeted for several months." J.A. at 193a. In addition, the court accepted the government's argument that the defendants were,

---

1. Defendants also raised a third contention, regarding the independence and impartiality of the grand jury, Joint Appendix (J.A.) at 48a–51a, which is not before us on appeal.

in effect, asking for specific performance of an unconsummated plea agreement. J.A. at 193a–194a.[2]

This appeal seeks interlocutory review of the District Court's pretrial order. Appellants contend that "vindictive prosecution" claims belong in the small class of cases which may be appealed before final judgment. We conclude that interlocutory appeal in this case is neither permitted by statute nor mandated by the decisions of the Supreme Court, and that such appeals would seriously disrupt the efficient functioning of the criminal justice system. We therefore hold that these appellants must await final judgment before challenging their indictments on due process grounds relating to the plea negotiation process, and we do not reach the merits of their claims.

## II. INTERLOCUTORY APPEALS IN CRIMINAL CASES

Congress has limited the jurisdiction of the Courts of Appeal over the District Courts of the United States to "all final decisions." 28 U.S.C. § 1291 (1976). As Justice Frankfurter wrote in Cobbledick v. United States, 309 U.S. 323, 325, 60 S.Ct. 540, 541, 84 L.Ed. 783 (1940), "Congress from the very beginning has, by forbidding piecemeal disposition on appeal of what for practical purposes is a single controversy, set itself against enfeebling judicial administration. * * * To be effective, judicial administration must not be leaden-footed." In the area of criminal justice, the Supreme Court has repeatedly emphasized the special importance of adhering to the final judgment rule. "[T]he delays and disruptions attendant upon intermediate appeal are especially inimical to the effective and fair administration of the criminal law." DiBella v. United States, 369 U.S. 121, 126, 82

S.Ct. 654, 658, 7 L.Ed.2d 614 (1962), quoted in Abney v. United States, 431 U.S. 651, 657, 97 S.Ct. 2034, 2039, 52 L.Ed.2d 651 (1977); see Cobbledick, supra, 309 U.S. at 325, 60 S.Ct. at 541.

One of the principal reasons for the Court's strict adherence to the doctrine of finality in criminal cases is the Sixth Amendment's guarantee of a speedy trial. "Fulfillment of this guarantee would be impossible if every pretrial order were appealable." United States v. MacDonald, 435 U.S. 850, 861, 98 S.Ct. 1547, 1553, 56 L.Ed.2d 18 (1978). A speedy trial, the Court has emphasized, serves a societal interest as well as the interests of the accused. Delay may prejudice the prosecution's ability to prove its case, increase the cost to society of maintaining defendants subject to pretrial detention, and prolong the period during which defendants released on bail may commit other crimes. MacDonald, supra, 435 U.S. at 862, 98 S.Ct. at 1553.[3]

Although an appellant must generally await final judgment before obtaining review of adverse determinations by the District Court, interlocutory appeal is permissible in a limited class of cases satisfying the criteria of the "collateral order" doctrine articulated in Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 545–547, 69 S.Ct. 1221, 1225–1226, 93 L.Ed. 1528 (1949). In Cohen, a stockholder's derivative action in which federal jurisdiction rested on diversity of citizenship, the defendant sought an order requiring the plaintiff, in compliance with a state statute, to post security for the costs of litigation. After the District Court denied its motion, the defendant sought and obtained immediate appellate review of the ruling. The Supreme Court subsequently held that the

2. The District Court's order denying the appellants' motion to dismiss is attached to this opinion as Appendix A. The District Court's order denying reconsideration is attached as Appendix B.

3. Recently the Supreme Court stated an additional justification for the final judgment rule, "the deference that appellate courts owe to the trial judge as the individual initially called upon

to decide the many questions of law and fact that occur in the course of a trial." Permitting piecemeal appeals, the Court wrote, would "undermine the independence of the District Judge, as well as the special role that individual plays in our judicial system." Firestone Tire and Rubber Co. v. Risjord, 449 U.S. 368, 374, 101 S.Ct. 669, 673, 66 L.Ed.2d 571 (1981).

Court of Appeals had jurisdiction under 28 U.S.C. § 1291 to hear the appeal.

The Court in *Cohen* identified several factors which, in its view, rendered the District Court's order a "final decision" within the meaning of the statute. First, the order fully disposed of the limited question at issue on appeal; in no sense did it leave the matter "open, unfinished or inconclusive." Second, the decision was not simply a "step toward final disposition of the merits of the case [which would] be merged in final judgment"; rather, it resolved an issue completely collateral to the cause of action asserted. Third, the decision involved an important right which would be "lost, probably irreparably," if review had to await final judgment; hence, to be effective, appellate review in that special, limited setting had to be immediate. *Abney, supra*, 431 U.S. at 658, 97 S.Ct. at 2039, *citing Cohen, supra*, 337 U.S. at 546, 69 S.Ct. at 1225.

In criminal cases, the Court has departed on only three occasions from the general prohibition against piecemeal appellate review. It has applied the *Cohen* principles to permit interlocutory appeal of the denial of a motion to reduce excessive bail, *Stack v. Boyle*, 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3 (1951); the denial of a motion to dismiss the indictment on double jeopardy grounds, *Abney, supra*; and the denial of a Congressman's motion to dismiss a prosecution prohibited by the Speech or Debate Clause, *Helstoski v. Meanor*, 442 U.S. 500, 99 S.Ct. 2445, 61 L.Ed.2d 30 (1979).

These three cases help to define the contours of the third requirement established by *Cohen* : that the right in question would be "lost, probably irreparably," unless review were granted before final judgment. *Cohen, supra*, 337 U.S. at 546, 69 S.Ct. at 1225. In each case, the Supreme Court, relying on a specific constitutional guarantee, held that the right in question must be vindicated before trial. The right to bail, provided in the Eighth Amendment,[4] by

definition pertains only to the period before judgment. As the Court noted, it "permits the unhampered preparation of a defense, and serves to prevent the infliction of punishment prior to conviction." *Stack, supra*, 342 U.S. at 4, 72 S.Ct. at 3. Similarly, both the Double Jeopardy Clause[5] and the Speech or Debate Clause[6] are designed to protect individuals from the burdens of litigation as well as the possibility of conviction. *Helstoski, supra*, 442 U.S. at 507–508, 99 S.Ct. at 2449; *Abney, supra*, 431 U.S. at 660–662, 97 S.Ct. at 2040–2041. Both of these guarantees assure that an individual "will not be forced, with certain exceptions, to endure the personal strain, public embarrassment, and expense of a criminal trial * * * " *Abney, supra*, 431 U.S. at 661, 97 S.Ct. at 2041; *see Helstoski, supra*, 442 U.S. at 507–508, 99 S.Ct. at 2449.

In the absence of a right to be free from *trial* as well as from conviction, the third *Cohen* requirement is not satisfied and the Court of Appeals may not entertain an interlocutory appeal. Because the "encouragement of delay is fatal to the vindication of the criminal law," the Court has declared, "[b]earing the discomfiture and cost of a prosecution for crime even by an innocent person is one of the painful obligations of citizenship." *Cobbledick, supra*, 309 U.S. at 325, 60 S.Ct. at 541. Recently, the Court reiterated the distinction between a right which *must* be upheld before trial, by an appellate court if necessary, and a right which *may* be upheld by the district court before trial.

Admittedly, there is value—to all but the most unusual litigant—in triumphing before trial, rather than after it, regardless of the substance of the winning claim. But this truism is not to be confused with the quite distinct proposition that certain claims (because of the substance of the rights entailed, rather than the advantage to a litigant in winning his claim sooner) should be resolved before trial.

---

4. U.S.Const., amend. VIII.

5. U.S.Const., amend. V, cl. 2.

6. U.S.Const., art. I, § 6.

*United States v. MacDonald, supra,* 435 U.S. at 860 n.7, 98 S.Ct. at 1552 n.7 (denying interlocutory appeal of denial of motion to dismiss on grounds of right to speedy trial). *See Parr v. United States,* 351 U.S. 513, 519–520, 76 S.Ct. 912, 916–917, 100 L.Ed. 1377 (1956) (denying interlocutory appeal of challenge to dismissal of indictment in one district and reindictment in allegedly improper district).[7]

## III. ANALYSIS

### A. *Absence of Controlling Supreme Court Precedent*

Appellants' claims of vindictive prosecution and prosecutorial misconduct would be appealable after a final judgment of conviction. Nevertheless, they contend that these claims satisfy the *Cohen* requirements for immediate appealability. We hold that this appeal does not satisfy the third *Cohen* criterion, that "to be effective, appellate review in that special, limited setting ha[s] to be immediate." *Abney v. United States, supra,* 431 U.S. at 658, 97 S.Ct. at 2039, *quoted in United States v. MacDonald, supra,* 435 U.S. at 855, 98 S.Ct. at 1550.[8] We are not persuaded by appellants' contention that *Blackledge v. Perry, supra,* creates a right to interlocutory appeal in every case in which the defendant alleges "vindictive prosecution." We conclude that *Blackledge* does not control this appeal.[9]

*Blackledge* arose in North Carolina's two-tier criminal justice system. A North Carolina statute gives the defendant an absolute right to trial *de novo* in the Superior Court upon conviction of a misdemeanor in the lower court. In apparent retaliation for the defendant's exercise of this statutory right, the prosecutor obtained an indictment charging a felony based on the same alleged conduct. The defendant pleaded guilty to the felony but subsequently sought a writ of habeas corpus in federal court.[10] The Supreme Court held that substituting a more severe charge on retrial posed a "realistic likelihood of 'vindictiveness,' " 417 U.S. at 27, 94 S.Ct. at 27, and therefore violated the due process rights of the defendant. It also upheld the propriety of granting habeas corpus despite the defendant's guilty plea to the felony indictment. Generally a guilty plea precludes a defendant from raising antecedent constitutional claims in a federal habeas corpus proceeding. *Tollett v. Henderson,* 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973). However, the Supreme Court decided, the defendant in *Blackledge* was challenging "the very power of the State to bring the defendant into court to answer the charge brought against him." The Court added,

7. In the context of a civil case, the Court has also recently asserted that the interest of a litigant in avoiding the expense of a trial tainted by pretrial error must give way to the societal interest in efficient judicial administration. "[I]nterlocutory orders are not appealable 'on the mere ground that they may be erroneous.' * * * Permitting wholesale appeals on that ground not only would constitute an unjustified waste of scarce judicial resources, but would transform the limited exception carved out in *Cohen* into a license for broad disregard of the finality rule imposed by Congress in § 1291." *Firestone Tire and Rubber Co. v. Risjord, supra* note 3, 449 U.S. at 378, 101 S.Ct. at 675–676.

8. Therefore, we do not need to decide whether the first and second *Cohen* requirements are met.

9. Appellants also place substantial emphasis on *United States v. Griffin,* 617 F.2d 1342 (9th Cir.), *cert. denied,* 449 U.S. 863, 101 S.Ct. 167, 66 L.Ed.2d 80 (1980), in which the Ninth Circuit held that *Blackledge* and *Abney* required interlocutory appeal in a case of alleged "vindictive prosecution." We are not bound by *Griffin,* and we believe that it was erroneously decided. *See* Sections III.B. and III.C. *infra.*

10. 28 U.S.C. § 2254(b) (1976) provides that the writ of habeas corpus "shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner." In an unpublished opinion, the District Court denied relief because it found that the prisoner had failed to exhaust state remedies. The Fourth Circuit reversed, holding that resort to the North Carolina courts would be "but a futile exercise" because the state Supreme Court had recently rejected the legal contention made by the petitioner. *Perry v. Blackledge,* 453 F.2d 856, 857 (4th Cir. 1971). On remand, the District Court granted the writ.

"the right that he asserts and that we today accept is the right not to be haled into court at all upon the felony charge. The very initiation of the proceedings against him in the Superior Court thus operated to deny him due process of law." *Blackledge, supra,* 417 U.S. at 30–31, 94 S.Ct. at 2103–2104.

Quoting this language in *Blackledge,* appellants contend that the Supreme Court has recognized that an allegation of "vindictive prosecution" entails a "right not to be tried at all," satisfying the third requirement of the *Cohen* test and justifying immediate appeal.[11] The Ninth Circuit accepted a similar argument in *Griffin, supra* note 9. Although it has "some superficial attraction," *see MacDonald, supra,* 435 U.S. at 860, 98 S.Ct. at 1552, the syllogism is faulty. Even if an interlocutory appeal would lie in the *Blackledge* situation, an issue we need not decide today, that outcome would not govern the appeal now before us.

The claims made by the appellants in this case differ materially from those made and upheld in *Blackledge.* The defendant's claim in *Blackledge* turned on a purely legal issue; the relevant facts were not in dispute. When the defendant sought a trial *de novo* after his misdemeanor conviction, the prosecutor brought felony charges against him for the same conduct. The Supreme Court held that the felony charge violated the Due Process Clause because it deterred the defendant from exercising his right to a new trial. Thus the conviction based thereon could not stand. In this case, in contrast, the due process contentions raised by the appellants rest on controverted factual assertions about the progress of plea bargaining over a period of nearly a year, prior to the filing of any formal charges. The appellants claim that the prosecutors violated due process by failing

to give adequate notice to the corporation of the full consequences of rejecting the proffered plea agreement, and by recommending indictments of individual officers in retaliation for the corporation's rejection of the agreement. They recognize that the appeal raises "a due process question of first impression in this Circuit." Reply Brief at 1. Thus, the allegations of vindictiveness in *Blackledge* and in this case involve different prosecutorial conduct against different parties at a different stage in the prosecution. In *Blackledge,* there were two final judgments of conviction, and no hope of relief in the state court system. Hence the federal writ of habeas corpus. *See* note 10 *supra.* Here, after several years, appellants' prosecution has hardly begun. These factual divergences between the two cases militate against the automatic transfer of *Blackledge's* conclusions to this case.

Moreover, the very reasoning of the Supreme Court in *Blackledge* narrowly limits the scope of the "right not to be haled into court" and suggests that the appellants' claims may lie beyond the perimeter. Having chosen originally to proceed on the misdemeanor charge in the lower state court, the Court held, the state was "simply precluded" from bringing more serious charges in the trial *de novo* in the Superior Court. *Blackledge, supra,* 417 U.S. at 30, 94 S.Ct. at 2103. Therefore, absent possible state court relief, federal habeas corpus was the appropriate remedy, despite the defendant's intervening guilty plea. In *Blackledge* itself, the Court acknowledged that habeas was not available after a guilty plea when the defendant claimed that the indictment had been returned by an unconstitutionally selected grand jury. 417 U.S. at 30, 94 S.Ct. at 2103; *see Tollett v. Henderson, supra.* "[E]ven a tainted indictment of the

---

11. In *Abney v. United States, supra,* a case allowing interlocutory appeal of the denial of a motion to dismiss the indictment on double jeopardy grounds, the Court noted that in *Blackledge,* the defendant had been "contesting the very authority of the Government to hale him into court to face trial on the charge against him." *Id.* 431 U.S. at 659–660, 97 S.Ct.

at 2040–2041. Although the citation of *Blackledge* appears in the Court's discussion of *Cohen's* second requirement, that the issues on appeal must be collateral to the merits, it may imply that the Court considered a *Blackledge* allegation analogous to a double jeopardy claim for purposes of the third *Cohen* requirement as well.

sort alleged in *Tollett* could have been 'cured' through a new indictment by a properly selected grand jury." *Blackledge, supra,* 417 U.S. at 30, 94 S.Ct. at 2103. Thus the Court recognized a "right not to be haled into court" only when the bar was absolute, permanent, and incurable. But here, as in *Tollett,* the government would not be "simply precluded" from prosecuting the defendants on the charges at issue. As in *Tollett,* a "tainted" indictment could be cured by bringing a new indictment with different prosecutors before a new grand jury. *Blackledge,* therefore, would not require us to find that the appellants here have a "right not to be tried at all" and hence a right to appeal the denial of their motion to dismiss at this stage in the proceedings.

### B.  *Nonappealability of Appellants' Claims*

In the absence of controlling precedent, we must decide the appealability question in this case by applying the general principles set forth in *Cohen* and subsequent cases. As the Supreme Court has recognized, there is no simple, predictable formula for determining the finality of a particular judicial order. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 170–171, 94 S.Ct. 2140, 2149, 40 L.Ed.2d 732 (1974). "The inquiry requires some evaluation of the competing considerations underlying all questions of finality—'the inconvenience and costs of piecemeal review on the one hand and the danger of denying justice by delay on the other.'" *Id.* at 171, 94 S.Ct. at 2149. We decide here that delaying review until after final judgment will not prevent effective relief, if relief is appropriate. We therefore have no jurisdiction to hear an interlocutory appeal of the appellants' allegations that

their due process rights were violated in connection with the plea bargaining process.

If the appellants' due process claims are upheld on appeal after final judgment, the court can provide effective relief by ordering the indictment dismissed as to some or all of the defendants, striking any additional charges that were improperly brought against the accused, requiring correction of the sentence, or reversing and remanding for reindictment and a new trial.[12] Several Courts of Appeals have provided such relief in postconviction appeals on grounds of vindictive or retaliatory prosecution. *See, e.g., United States v. Goodwin,* 637 F.2d 250, 255 (4th Cir. 1981) (reversing conviction); *United States v. Groves,* 571 F.2d 450, 455 (9th Cir. 1978) (reversing conviction and ordering dismissal of indictment); *United States v. Ruesga-Martinez,* 534 F.2d 1367, 1371 (9th Cir. 1976) (reversing convictions and remanding for dismissal of indictment); *United States v. Jamison,* 505 F.2d 407, 417 (D.C.Cir.1974) (reversing convictions and remanding for dismissal of indictment); *United States v. Gerard,* 491 F.2d 1300, 1307 (9th Cir. 1974) (vacating judgments and remanding for dismissal of count of indictment). The Courts of Appeals deciding these cases did not consider themselves incapable of rendering appropriate relief.[13]

It is true that post-conviction relief will not spare the defendant the burden of defending himself at trial. Criminal defendants have many rights that cannot be vindicated by interlocutory appeal if relief is denied before trial by the District Court. Recently the Supreme Court held that Section 1291 did not permit an interlocutory appeal from the denial of a motion to dismiss the indictment because pretrial delay violated the right to a speedy trial. *Mac-*

---

**12.** In *Burks v. United States,* 437 U.S. 1, 13–14, 98 S.Ct. 2141, 2148–2149, 57 L.Ed.2d 1 (1978), the Court asserted that the Double Jeopardy Clause did not prohibit retrial after the defendant had obtained a reversal of his conviction on grounds of a fatally defective indictment.

**13.** The Supreme Court has recently implied that post-conviction relief is adequate in a claim of selective prosecution in violation of the Equal Protection Clause. *Flynt v. Ohio,*

—— U.S. ——, 101 S.Ct. 1958, 68 L.Ed.2d 489 (1981) (holding that 28 U.S.C. § 1257 does not permit interlocutory federal review of allegedly selective prosecution). Vindictive prosecution claims, like those alleging selective prosecution, contend that a prosecution should never have been initiated. *See United States v. Wilson,* 639 F.2d 500, 502 (9th Cir. 1981) (appealability of vindictive prosecution claim requires same result in selective prosecution case).

*Donald v. United States, supra.* The Court conceded that it had previously held dismissal of the indictment to be the proper remedy when the Sixth Amendment right to a speedy trial has been violated. *Strunk v. United States,* 412 U.S. 434, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973). This fact, however, "does not mean that a defendant enjoys a 'right not to be tried' which must be safeguarded by interlocutory appellate review." *MacDonald, supra,* 435 U.S. at 860 n.7, 98 S.Ct. at 1552 n.7. Dismissal of the indictment, the Court added, is the proper sanction when a defendant has previously been granted immunity from prosecution, when his indictment is defective, or, usually, when the only evidence against him was seized in violation of the Fourth Amendment. But in none of these cases has the Court concluded that the defendants could pursue interlocutory appeals. *Id., citing Abney, supra,* 431 U.S. at 663, 97 S.Ct. at 2042 (allegation that indictment failed to state an offense); *Cogen v. United States,* 278 U.S. 221, 227, 49 S.Ct. 118, 120, 73 L.Ed. 275 (1929) (motion for suppression of illegally seized evidence); and *Heike v. United States,* 217 U.S. 423, 430, 30 S.Ct. 539, 541, 54 L.Ed. 821 (1910) (plea for statutory immunity).

In addition to motions to dismiss based on speedy trial grounds, *see United States v. Mehrmanesh,* 652 F.2d 766 (9th Cir. 1981) (alleged violation of Speedy Trial Act), a variety of pretrial motions seeking the termination of a criminal prosecution have been held by the lower courts to be nonappealable before final judgment. Defendants may not obtain interlocutory review of due process claims relating to prosecutorial conduct in previous proceedings. *See, e. g., United States v. Barham,* 608 F.2d 602, 604 (5th Cir. 1979) (prosecutors' conduct in previous trials on same charges); *United States v. Solano,* 605 F.2d 1141, 1142, 1145–1146 (9th Cir. 1979), *cert. denied,* 444 U.S. 1020, 100 S.Ct. 677, 62 L.Ed.2d 652 (1980) (unspecified due process contentions); *Unit-*

*ed States v. Garcia,* 589 F.2d 249, 250, 252 (5th Cir.), *cert. denied,* 442 U.S. 909, 99 S.Ct. 2821, 61 L.Ed.2d 274 (1979) (government's alleged use, after reindictment, of information given by defendants to probation officers in connection with possible plea settlement). Defendants must await final judgment before obtaining review of a motion to dismiss on the ground that the court lacks jurisdiction over the subject matter of the case. *United States v. Layton,* 645 F.2d 681, 682–684 (9th Cir. 1981), or that the court lacks personal jurisdiction over the defendant because government officials participated in his allegedly illegal abduction from a foreign country, *United States v. Sorren,* 605 F.2d 1211, 1213–1215 (1st Cir. 1979), or that venue is improper as a matter of law, *United States v. Layton,* 645 F.2d 21, 21 (9th Cir. 1981); *United States v. Martin,* 620 F.2d 237, 238–239 (10th Cir. 1980), *cert. denied, sub nom. Stipe v. United States,* 449 U.S. 890, 101 S.Ct. 248, 66 L.Ed.2d 116 (1980). Defendants must undergo trial before obtaining review of an attempt to overturn the indictment because of irregularities in the grand jury proceedings, *United States v. Linton,* 655 F.2d 930 (9th Cir. 1980) (alleging prosecutorial misconduct and use of perjured testimony before grand jury); *United States v. Garner,* 632 F.2d 758, 761–766 (9th Cir. 1980, *cert. denied,* 450 U.S. 923, 101 S.Ct. 1373, 67 L.Ed.2d 351 (1981) (contention that grand jurors who indicted defendant did not hear the evidence). These cases, holding that appellate courts would not intervene before trial to correct possible errors below, cannot readily be distinguished in principle from the case before us. All of the appellants in these cases contended that, because of defects in the proceedings, it was improper to proceed with the impending trial.

Courts of Appeals, however, have not uniformly refused to permit interlocutory appeals of motions to dismiss in criminal cases.[14] The logic of double jeopardy has

14. We confine our discussion in this section to criminal cases, because the Court has stressed that the finality rule has a special importance

in the administration of criminal justice. *See* Section II *supra.* The allowance of interlocuto-

been extended to encompass the allegation that the indictment violated a prior plea bargain, *United States v. Alessi,* 536 F.2d 978, 980–981 (2d Cir. 1976),[15] and the claim that collateral estoppel prevented trial on a charge based on facts previously determined by a jury, *United States v. Venable,* 585 F.2d 71, 74–75 (3d Cir. 1978).[16] In addition, the policy reasons underlying interlocutory appeals of Speech or Debate Clause claims have been held applicable to defenses raised by Congressmen on the grounds of violation of separation of powers principles. *United States v. Myers,* 635 F.2d 932, 935–936 (2d Cir. 1980) (noting that "little would be lost in the way of judicial efficiency" because of the "extremely small" number of criminal cases against Congressmen).

Beyond the penumbras of *Abney, supra,* and *Helstoski, supra,* the Ninth Circuit has permitted immediate appeals of cases of alleged "vindictive prosecution," *United States v. Griffin, supra,* 617 F.2d at 1345–1346; *United States v. Burt,* 619 F.2d 831, 835 (9th Cir. 1980); *United States v. Shaw,* 655 F.2d 168 (9th Cir. 1981) (selective prosecution); *United States v. Wilson,* 639 F.2d 500, 501–502 (9th Cir. 1981), and alleged violation of the indictment clause of the Fifth Amendment by prosecuting an "infamous crime" by information, *United States v. Yellow Freight System, Inc.,* 637 F.2d 1248, 1250–1251 (9th Cir. 1980). We are not bound by the Ninth Circuit's approach to interlocutory appeals. We find its reasoning to be unpersuasive and the consequences of overly generous allowance of interlocutory appeals to be pernicious. *See* Section III.C. *infra.* Therefore, we prefer

to adhere to the more restrictive approach generally adopted by the other circuits.

### C. Policy Considerations

■ Our conclusion, based on the principles set forth in *Cohen,* is "reinforced by the important policy considerations that underlie both the Speedy Trial Clause and 28 U.S.C. § 1291." *MacDonald, supra,* 435 U.S. at 861, 98 S.Ct. at 1553. In *MacDonald,* denying interlocutory appeal in the speedy trial context, the Supreme Court attached importance to the fact that there is "nothing about the circumstances that will support a speedy trial claim which inherently limits the availability of the claim." A double jeopardy claim, immediately appealable under *Abney, supra,* requires at least a colorable showing that the defendant has previously been in jeopardy of federal conviction on the same or a related offense. On the other hand, the Court noted, "any defendant can make a pretrial motion for dismissal on speedy trial grounds." *Id.* at 861–862, 98 S.Ct. at 1553. The same is true of a pretrial motion for dismissal on due process grounds arising from the plea bargaining process.

If we were to hold that the appellants' claims are appealable at this stage in the proceedings, we would open the door to interlocutory appeals in a high proportion of criminal cases. Plea bargaining is attempted in many of the cases eventually brought to trial. For purposes of interlocutory appeal, appellants' due process claims are indistinguishable from countless other allegations of unfairness in the plea bar-

---

ry appeals in civil cases, therefore, sheds little light on the present case.

**15.** In a subsequent interlocutory appeal brought by the same defendant, another panel of the Second Circuit followed the holding of *Alessi I* regarding appealability but indicated that, if the issue were open in the circuit, it would dismiss the appeal for want of jurisdiction. *United States v. Alessi,* 544 F.2d 1139, 1152 (2d Cir.), *cert. denied,* 429 U.S. 960, 97 S.Ct. 384, 50 L.Ed.2d 327 (1976). The panel recognized that it would "be hard to limit the claims for such review which counsel will advance." *Id.* Several years later, the Tenth Circuit interpreted *Alessi I* very narrowly and

denied interlocutory appeal in a case involving a very similar claim that the indictment violated the terms of a prior plea bargain. *United States v. Eggert,* 624 F.2d 973, 974–976 (10th Cir. 1980).

**16.** *Venable* rests on *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), which held that the doctrine of collateral estoppel is embodied in the Fifth Amendment guarantee against double jeopardy. In contrast, interlocutory appeal has been denied when a collateral estoppel claim would merely suppress evidence but not preclude trial on the charge. *See United States v. Mock,* 604 F.2d 336, 337–341 (5th Cir. 1979).

gaining process that could be made by defendants. Allowing interlocutory appeals based on the course of plea negotiations would make such appeals the rule, rather than the exception, in criminal prosecutions.[17] The inevitable result would be "undue litigiousness and leaden-footed administration of justice, particularly damaging to the conduct of criminal cases." *DiBella, supra,* 369 U.S. at 124, 82 S.Ct. at 656.

The issues raised by a claim of due process violations in plea bargaining, moreover, would often be complex and difficult to determine on appeal. Complexity would exacerbate the delay caused by interlocutory appeal. As in the present case, the facts may be in dispute between the parties. Typically, no verbatim record is made of plea negotiations, and the parties may present conflicting testimony. The appellate court would be required to undertake a full examination of the evidentiary record. In contrast, double jeopardy claims, immediately reviewable under *Abney, supra,* can be determined by reference to the records of judicial proceedings; such a claim "requires at least a colorable showing that the defendant once before has been in jeopardy of federal conviction on the same or a related offense." *MacDonald, supra,* 435 U.S. at 862, 98 S.Ct. at 1553. Similarly, a *Blackledge* claim can be decided by comparing the original charges against the defendant with those brought after his exercise of a constitutional or statutory right. Here, there is no formal set of charges to serve as the benchmark for a simple legal determination by the appellate court.

Interlocutory appeals would also chill the plea bargaining process, which the Supreme Court has described as an "important componen[t] of this country's criminal justice system." *Bordenkircher v. Hayes, supra,* 434 U.S. at 361–362, 98 S.Ct. at 666–667, *quoting Blackledge v. Allison,* 431 U.S. 63, 71, 97 S.Ct. 1621, 1627, 52 L.Ed.2d 136 (1977). Prosecutors would face the stark reality that, simply by rejecting a proffered plea and then filing a motion to dismiss with allegations of unfairness, defendants could delay prosecution of the case, possibly interminably, during the pendency of a potentially protracted appeal. Yet one of the primary purposes of plea bargaining, approved by the Supreme Court as "highly desirable," is "prompt and largely final disposition of most criminal cases." *Santobello v. New York,* 404 U.S. 257, 261, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971).

The disruptive consequences of interlocutory appeals have been experienced by the Ninth Circuit, the only circuit so far which departs from the final judgment rule in "vindictive prosecution" cases. A recent panel of that court, reluctantly applying the principle announced in *Griffin, supra,* to selective prosecution cases, noted that "[p]romiscuous resort to interlocutory appeals following *Griffin* has been counterproductive." *United States v. Wilson, supra,* 639 F.2d at 502 n.1. Such appeals frustrated the speedy trial policy and multiplied the work of the court. In addition,

> Many of the claims of selective or vindictive prosecution are so patently frivolous that they can be disposed of summarily; but even summary disposition cranks into the life of a district court case several weeks of delay. Delay, disruption of calendars, loss of jury time, and needless expense follow in the wake of these interlocutory appeals. Once the *Griffin* rule was established, defense attorneys, as advocates, properly added "vindictive prosecution" to their check list of possible strategy for delay, continuance, severance, or dismissal. The resulting outpouring of motions was predictable.

*Id.* The Ninth Circuit, the *Wilson* panel lamented, had processed thirteen *Griffin* vindictive prosecution appeals and twenty-five *Abney* double jeopardy appeals during

---

17. Similar considerations led the Ninth Circuit, in *United States v. Garner,* 632 F.2d 758 (9th Cir. 1980), cert. denied, 450 U.S. 923, 101 S.Ct. 1373, 67 L.Ed.2d 351 (1981), to refuse to allow the immediate appeal of a claim based on alleged grand jury irregularities. Asserting the importance of "pragmatic considerations" in its determination, the panel maintained that allowing an interlocutory appeal in this case would open the possibility for such appeals in nearly every criminal case, and "would create nothing short of chaos in the criminal justice system." *Id.* at 765–766.

four summer months in 1980. Few appeared to have any merit. We are not prepared to embark on this frustrating and wasteful path where an appropriate remedy is otherwise available.

## IV. CONCLUSION

■ In summary, we are convinced that the efficiency of the criminal justice system and the social interest in speedy trials would be gravely impaired if we permitted interlocutory appeals from claims of due process violations arising from the plea bargaining process. This court is not prepared to make the massive inroads into the statutory final judgment rule invited by the appellants. Far-reaching changes in a longstanding rule of appellate procedure are properly the province of the Congress and the Supreme Court.

The order of the District Court denying the appellants' motion to dismiss the indictments is not subject to interlocutory appeal. We therefore dismiss this appeal for lack of jurisdiction. These claims may be asserted on appeal if the appellants are subsequently convicted.

*Appeal dismissed.*

### APPENDIX A

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

Criminal No. 79–516

UNITED STATES of America

v.

McDONNELL DOUGLAS CORPORATION, *et al.*, Defendants

Filed Jan. 13, 1981

ORDER

Defendants Brizendine, Forsyth, McDonnell and Pruitt have moved to dismiss the indictment as to them on the grounds that the misconduct of the prosecutors in bringing the indictment was violative of due process of law. Defendants recount their version of the history of the plea negotiations and indictment in this case, concluding that the indictment of the individual defendants was a vindictive response to the rejection by MDC Chairman McDonnell of a plea agreement which would have resulted in charges against the corporation only and not individuals. Defendants claim that Mr. McDonnell was not warned by the prosecutors that his rejection would result in the indictment of individuals, and that once that result became known to the corporation, it decided to accept the plea agreement. At that point the prosecutors told defendants that the plea agreement was no longer available because letters of intent to indict had already been sent to individual defendants. Defendants rely on *Bordenkircher v. Hayes,* 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978) for the proposition that the government may not "up the ante" after rejection of a plea unless the defendant has been clearly informed of the alternatives facing him. Defendants also argue, citing *Blackledge v. Perry,* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974) and *U.S. v. Ruesga-Martinez,* 534 F.2d 1367 (9th Cir. 1976), that even the appearance of prosecutorial vindictiveness in response to a defendant's exercise of a constitutional or procedural right warrants dismissal unless the prosecution can prove that the charges were brought for other than a retaliatory motive.

Defendants further seek dismissal on another ground; that they were deprived of their Fifth Amendment guaranty of indictment by an independent, impartial grand jury. They allege the grand jury was deprived of essential information in that it was not told that no one had ever been indicted under those statutes for the type of conduct involved, or that there was no law prohibiting so-called questionable foreign payments before December 1977, or that prior to September 27, 1979, the prosecutors had indicated an intention not to prosecute individual MDC employees in connection with sales efforts in Pakistan, or as they assert, that the reason the prosecutors decided to recommend indictment of the four individuals was because Chairman McDonnell initially refused to agree to a corporate conviction.

The Government's pre-indictment history of the case agrees with that of the defendants in its essentials. Specifically, exploration of a negotiated settlement began in February of 1979. The prosecutors refused to make any proposals which would assure that no individual corporate employees would be indicted until April of 1979, when they expressed a willingness to discuss a "Westinghouse settlement", which would have involved a corporate guilty plea, payment of fines, and a termination of the investigation. Plea negotiations continued until the end of April, when the prosecutors suspended them to pursue what they considered to be a new development in the case. In August negotiations were resumed, and in September, the prosecutors presented a draft of the proposed plea agreement to MDC. Certain language changes were agreed to by the parties. Chairman J.S. McDonnell of MDC, (father of the defendant in this case), however, distressed with the fact that the agreement included a guilty plea by MDC to a racketeering charge, flew to Washington, D.C. and on September 26 met with the prosecutors and informed them that he could not accept the plea agreement on behalf of MDC. On September 27, Clark Clifford, counsel for MDC, telephoned the prosecutors to advise them that Mr. McDonnell's position had not changed. That same day, counsel for defendants Brizendine, Forsyth, and Pruitt received telephone calls from the prosecutors advising them that notices of intent to indict were being mailed, and that they were recommending to their superiors that these individuals and MDC be indicted. Subsequently, the MDC Board of Directors decided to accept the proposed plea agreement, and so informed the prosecutors on October 2. The prosecutors responded that the plea agreement was no longer available because the letters of notice of intent to indict had already been sent out on September 28. Further meetings with high officials in the Justice Department were requested by defendants' counsel. At these meetings, defense counsel attempted to persuade the Justice Department officials not to go forward with the prosecution. On October 10, Assistant Attorney General (AAG) Heymann accepted defense counsel's offer to waive the statute of limitations for 30 days to afford defense counsel more time to provide the Government with material in support of their position, and to ensure that the final decision would not be hastily made because of limitations problems. Further information and/or arguments were submitted by all defendants. On November 5, AAG Heymann authorized the prosecutors to seek indictments of MDC and the four individual defendants, and on November 9, the grand jury returned the indictments.

The Government adds to defendants' version of the history incidents which point to the fact that the defendants were aware throughout the negotiation process that indictment of individuals was a possibility if the plea agreement were not consummated. The Government points to meetings and conversations where the subject was discussed, as well as the fact that by March 2, 1979, target letters had been sent to defendants Pruitt, Brizendine, and Forsyth, and on May 24, counsel for James S. McDonnell, III were advised that he had become a target of the grand jury investigation. The Government further contends that counsel for the defendants, who also represented many of the witnesses before the grand jury, were never misled as to the fact that the investigation was proceeding simultaneously with plea negotiations.

Even relying solely upon facts uncontroverted by defendants, there is no indication of prosecutorial misconduct warranting dismissal of the indictment. Although the prosecutors certainly were not obligated to reject MDC's change of heart regarding the proposed plea agreement, they had every right to do so. Especially with a statute of limitations about to expire, the prosecutors cannot be faulted for going ahead with the indictments after the plea agreement was rejected. The fact that the prosecutors agreed to extend the statute of limitations to reconsider does not militate against them. *Bordenkircher v. Hayes, supra*, upon which defendants rely, clearly distinguishes plea bargaining from situations where due

process is violated by the unilateral imposition of a penalty upon a defendant who has chosen to exercise a legal right such as attacking his conviction. Plea bargaining involves an arm's-length give and take between two parties with relatively equal bargaining power, and the prosecutor may, as part of the bargaining process, both make and carry out a threat to indict on a more serious offense if the agreement is rejected, providing the new charge is supported by probable cause. This was the exact situation in *Bordenkircher*. There is no question of vindictiveness even where a more serious charge is brought after the rejection of a plea agreement. It is questionable whether the charges here can even be characterized as "more serious" under *Bordenkircher*. There, defendant was *re*indicted after an original indictment on a lesser charge. Here, defendants were indicted for the first time on charges which although admittedly more serious to defendants than those which the Government would have been willing to accept had it been saved the time and expense of a trial, unquestionably emerged logically from the grand jury investigation, which had long ago targeted individuals.

Defendants claim that a defendant must be explicitly informed of the consequences of rejecting a plea in order to pass constitutional muster under *Bordenkircher*. (It is undisputed that the prosecutors did not specifically warn Chairman McDonnell that indictment of individuals would result if he rejected the agreement). Although the defendant in *Bordenkircher* was so warned, the Court makes no indication that this is a requirement in all cases. This case is distinguishable because of its pre-indictment posture. In *Bordenkircher* the defendant had already seen the indictment the government had chosen to bring absent a plea agreement, and had no previous indication that more serious charges based on the same conduct would be brought. Here, defendants at the very least knew that indictment of individuals was a possibility, since they had been targeted for several months. They were not misled by a previous indictment on lesser charges. The language of

*Bordenkircher* clearly implies that the notice requirement is limited to the situation in that case.

"This is not a situation, therefore, where the prosecutor without notice brought an additional and more serious charge after plea negotiations relating only to the original indictment had ended with the defendant's insistence on pleading not guilty. As a practical matter, in short, this case would be no different if the grand jury had indicted Hayes as a recidivist from the outset, and the prosecutor had offered to drop that charge as part of the plea bargain."

*Bordenkircher, supra,* at 360, 98 S.Ct. at 666.

As the Government points out, defendants are in effect asking for specific performance of an unconsummated plea agreement. Although the technicalities of contract offer and acceptance have been rejected with regards to plea bargaining, *Cooper v. U.S.,* 594 F.2d 12 (4th Cir. 1979), this was only in a factual context where the proposal was specific, made without reservation as to the approval of a superior (in the instant case, the prosecutor asserts there was an express reservation), and where defendant assented promptly and unequivocally to its terms, (in that case, within hours of the offer). Other courts have held that the prosecutor may withdraw the offer at any time prior to acceptance as long as there has been no detrimental reliance. The defendant is left with the same constitutional right to a jury trial he would have had had no plea bargain been offered in the first place, so he has lost no rights. *Government of the Virgin Islands v. Scotland,* 614 F.2d 360 (3rd Cir. 1980). Here the plea bargain was never accepted before it was effectively withdrawn by first the telephonic alert, promptly followed by the written notices of intent to indict, and there is no claim of detrimental reliance. This is not a situation where a plea agreement was accepted within hours of the offer, only to be met with the statement that it had already been withdrawn as in *Cooper*. The plea agreement here was forthrightly *rejected* on Sep-

tember 26th, which rejection was confirmed by its counsel the next day, and not accepted until five days later, and four days after notices of indictment had been sent.

Defendants' contentions concerning the grand jury remain to be considered. None of the information which the defendants claim was improperly withheld from the grand jury was either relevant or appropriate to disclose to that body. Defendants' first two contentions, that the grand jury should have been informed that no one had ever been indicted for that type of conduct under those statutes before, and that there was no law making the commissions payments in question illegal before December of 1977, are related to defendants' characterization of this case as a foreign bribery case. The prosecutors have disclaimed any intent to prosecute the defendants for foreign bribery, and in fact have not indicted them for that offense. See Order Denying Defendants' Joint Motion to Dismiss Counts 1–6 of the Indictment Because These Counts Deprive Defendants of Their Due Process Rights, of this date. The statements that defendants claim should have been made to the grand jury are irrelevant to the charges brought. The third piece of information which defendants claim should have been disclosed, that before September 27, 1979 the prosecutors had indicated an intention not to prosecute individual MDC employees, is a misleading and incomplete characterization of the situation. None of the facts presented by defendants lead to any conclusion except that a plea agreement which would not have involved individual defendants was prepared but not consummated. It would obviously be improper to discuss any aspect of plea negotiations with the grand jury. Defendants' final contention, that the grand jury should have been told that the reason the prosecutors decided to recommend indictment of the four individuals was because Chairman McDonnell initially refused to agree to a corporate conviction, suffers from the same flaw, in requiring the disclosure of information about plea negotiations. Defendants' reliance on *U.S. v. DeMarco*, 401 F.Supp. 505 (C.D.Cal.1975) *aff'd* 550 F.2d 1224 (9th

Cir.), *cert. denied* 434 U.S. 827, 98 S.Ct. 105, 54 L.Ed.2d 85 (1977) for the proposition that it violates due process to fail to inform the grand jury of a colorable claim that the bringing of an indictment rests upon improper motives is misplaced. As discussed above, there was no colorable claim of improper motivation to disclose.

It is therefore this 13th day of January, 1981, hereby

ORDERED, that the Motion to Dismiss the Indictment as to Defendants Brizendine, Forsyth, McDonnell and Pruitt be and hereby is denied.

> /s/ Joyce Hens Green
> Joyce Hens Green
> United States District Judge

## APPENDIX B

### UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

Criminal No. 79–516

UNITED STATES of America

v.

McDONNELL DOUGLAS CORPORATION, *et al.*, Defendants

Filed Feb. 9, 1981

### ORDER

Defendants have moved to reconsider the denial of their Motion to Dismiss the Indictment as to Defendants Brizendine, Forsyth, McDonnell and Pruitt (Motion to Dismiss). Defendants continue to contend that *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978) requires dismissal of the indictment on the grounds that Chairman McDonnell was not informed that indictment of the individual defendants would follow his rejection of the plea. No reason has been found to alter the previous holding (Order of January 13, 1981 denying the Motion to Dismiss) that *Bordenkircher* does not command such a result in this case.

In any case, there is little doubt that Chairman McDonnell, who was represented by experienced counsel, knew that indict-

ment of individuals was a possibility if he rejected the agreement. According to defendants' version of the plea negotiations, defense counsel made clear from the start that assurance that individuals would not be indicted was their absolute requirement for any plea agreement. Motion to Dismiss at 3. Defense counsel would not have pressed for a plea agreement precluding indictment of individuals if they had not believed that individuals might be indicted absent a plea agreement. To claim now that Mr. McDonnell was misled because he was not expressly warned at a particular meeting ignores reality. If an agreement not to indict individuals (with a few reserved exceptions) had not been a part of the rejected plea agreement, the individual defendants would not even have standing to raise any issue concerning that agreement, to which they were not parties. It is axiomatic that when a plea agreement is rejected, the government may bring charges which it had offered to refrain from bringing pursuant to the agreement. It would be superfluous to inform a defendant that provisions of a plea agreement will not be honored after that agreement is rejected.

Defendants' argument that Mr. McDonnell must have been misled, because "once the consequences of rejection were made clear, the Corporation acted almost immediately to accept the plea agreement," Motion to Reconsider at 7, is also unconvincing. It would be a fair inference that Mr. McDonnell acted against the advice of counsel on September 26, 1979 when he rejected the agreement which, defendants advise, had been painstakingly negotiated, down to changes in wording, for months. (See Motion to Dismiss 9–10; Response of the United States at 11, 14). The following day, Mr. McDonnell reaffirmed through counsel that he had not changed his mind. Following the notices of intent to indict the individuals, "[t]hese facts [concerning the indictment of individuals after rejection of the plea] were brought to the attention of the MDC Board of Directors who had not been involved in the decision to refuse the prosecutor's plea offer. As a result, MDC decided that the proposed Plea Agreement

should be accepted." Motion to Dismiss at 11. This change of heart was communicated to the prosecutors four days after Mr. McDonnell reaffirmed his rejection of the plea, and not immediately as claimed. The circumstances point, if anywhere, to the inference that Chairman McDonnell was in disagreement with both corporate counsel and other members of his Board of Directors; not that he was misled by the prosecutors. Whatever may be the facts in this regard, defendants have not presented a picture of even the appearance that Chairman McDonnell was misled.

The issues which defendants ask be explored at an evidentiary hearing on this motion could not result in a different resolution. These are:

a) Whether on September 26 or 27, 1979, the prosecutors were prepared to terminate the investigation on the basis of a corporate plea, with no prosecution of individuals.

b) Whether, as they contend, the prosecutors in fact altered their views of the culpability of the individual defendants in light of the grand jury testimony of a senior corporate marketing officer and former PIA Managing Director Rafique Saigol.

c) Whether in fact the use of a racketeering charge had become "almost routine" in foreign payments cases, as the prosecutors represented to Chairman McDonnell on September 26, 1979.

d) Whether the prosecutors' threat of a racketeering indictment was made in bad faith.

e) Whether the prosecutors' insistence on a racketeering plea was designed solely to generate a fine and forfeiture of $1,265,000.

f) Whether the Chairman would have accepted a corporate plea if the prosecutors had proposed a plea based on mail fraud, wire fraud, and false statements charges—the charges actually brought in the indictment—rather than on the racketeering charge that the prosecutors sought to misuse in this case.

Whether the prosecutors were prepared to terminate the investigation on Septem-

ber 26 or 27, 1979 on the basis of a corporate plea has no bearing on what they were prepared to do if the plea were rejected. As discussed in the Order denying the Motion to Dismiss, the prosecutors had the right to withdraw the offer after it was rejected, and were not obligated to reopen it when MDC changed its position. The prosecutors also had the right to proceed with the presentation to the grand jury regardless of whether or not that decision was based on new evidence.

The issues raised in points (c) through (f) appear to question the good faith of the plea agreement that was offered to MDC. It is difficult to perceive any possible relevance of these issues. The Government had no obligation to proffer any plea agreement at all, much less one that would have been more palatable to Mr. McDonnell.

The Motion to Dismiss having been reconsidered, and finding no cause to alter the previous ruling, and no purpose to be served in holding an evidentiary hearing, it is this 9th day of February, 1981, hereby

ORDERED, that defendants' Motion for Reconsideration and evidentiary hearing regarding motion to dismiss the indictment as to defendants Brizendine, Forsyth, McDonnell and Pruitt be, and it hereby is, denied.

/s/ Joyce Hens Green
Joyce Hens Green
United States District Judge