**Robert L. BRUCE, Jr., Appellant,**

v.

**UNITED STATES, Appellee.**

No. 82–1214.

District of Columbia Court of Appeals.

Submitted Sept. 29, 1983.

Decided Jan. 25, 1984.

Martin S. Echter, Washington, D.C., appointed by this court, for appellant.

Stanley S. Harris, U.S. Atty. at the time the brief was filed, Michael W. Farrell, Harold L. Cushenberry, Jr., and John E. Stevens, Asst. U.S. Attys., Washington, D.C., for appellees.

Before KERN, NEBEKER and BELSON, Associate Judges.

PER CURIAM:

Appellant, Robert L. Bruce, was convicted by a jury of two counts of assault with a dangerous weapon, D.C.Code § 22–502 (1981), one count of second-degree murder while armed, D.C.Code §§ 22–2403 and –3202 (1981), and two counts of carrying a pistol without a license, D.C.Code § 22–3204 (1981). Appellant was committed for a period of twelve years under the Federal Youth Corrections Act, 18 U.S.C. § 5010(c) (1976). We reject appellant's contention that he was entitled to a severance of the charges relative to the two respective incidents, but agree with his contention that the evidence does not support two separate convictions for carrying a pistol without a license.

The charges against appellant arose from two shooting incidents which occurred about eight hours apart. The first shooting incident occurred at about 5:30 p.m. on July 4, 1980, at Minnick's Market. Appellant demanded to know why Robert Reynolds had scowled at him, slapped Mr. Reynolds and then shot him in the stomach and fled. The second was an unrelated incident, occurring at about 1:00 a.m. on July 5, 1980, at the scene of a Fourth of July party in the yard area between the home of appellant's grandmother and the home of the neighboring Onley family. The police had been summoned to break up a dispute between appellant's family and the Onleys. Appellant was not involved in the initial dispute, but after the police left the scene another dispute arose during which appellant threw a bottle at Roland Onley, Sr., striking him in the back of the head. When Mr. Onley then moved toward appellant, appellant produced a pistol and began shooting. Mr. Onley sustained seven bullet wounds, collapsed and died. In addition, one bullet struck Wallace Johnson in the leg.

▪ Appellant argues that the trial court abused its discretion by denying his motion to sever the counts relating to the two separate incidents. We do not agree. When, as here, joinder under Super.Ct. Crim.R. 8 is based on the "similar character" of the offenses, this court will not find an abuse of discretion by the trial court where "(1) the evidence as to each offense is separate and distinct, and thus unlikely to be amalgamated in the jury's mind into a single inculpatory mass, or (2) the evidence of each of the joined crimes would be admissible in a separate trial of the others." *Evans v. United States*, 392 A.2d 1015, 1020 (D.C.1978) (quoting *Bridges v. United States*, 381 A.2d 1073, 1075 (D.C.1977), *cert. denied*, 439 U.S. 842, 99 S.Ct. 135, 58 L.Ed.2d 141 (1978)); *see Leasure v. United States*, 458 A.2d 726, 729 (D.C.1983).

▪ In this case, the evidence of the two incidents was mutually admissible to show intent. *See Leasure v. United States, supra,* 458 A.2d at 729. Appellant argues self defense as to each shooting incident, but the government maintained that the evi-

dence showed that appellant deliberately provoked the confrontations with the victims in order to accomplish his objective of killing them. The evidence of each shooting was probative of his motive or intent in committing the other because, taken together, such evidence tended to negate the possibility that appellant had acted in self defense and to establish rather that he had pursued a deliberate course of action in each incident. *See* 2 WIGMORE, EVIDENCE § 302 (Chadbourn rev. 1979).

Moreover, the record shows that the evidence regarding the two incidents was separate and distinct so that it was not likely "to be amalgamated in the jury's mind into a single inculpatory mass." *Bridges v. United States, supra,* 381 A.2d at 1075.

Second, appellant argues that one of his two convictions for carrying a pistol without a license should be vacated because he carried the pistol without interruption over a span of eight hours. We agree. The offense of carrying a weapon is continuous and may be committed by a person who is moving from place to place. A second offense does not arise until the continuity of the first act is broken. 94 C.J.S. *Weapons* § 3. Based on the language of the statute,[1] the continuity of the first act would have been broken if appellant had put down the weapon so that there was a break in his carrying the proscribed weapon, or if appellant had returned to his dwelling house, place of business, or other land possessed by him where he might lawfully carry the weapon. Then, if he had again taken up the weapon and gone out into the public with the weapon, two separate offenses would have been committed under such circumstances.

The record reflects that in between the two incidents here appellant returned to the home of his grandmother where he spent several hours. After reviewing the language of the statute and the case precedent, we conclude that the house of appellant's grandmother cannot qualify as a place where appellant might lawfully possess a pistol, thereby breaking the continuity of carrying the pistol so as to justify a second conviction under the statute.

The congressional intent of § 22–3204 is to "drastically tighten the ban on carrying dangerous weapons" within the District of Columbia. *Logan v. United States,* 402 A.2d 822, 825 (D.C.1979), (quoting *United States v. Walker,* 380 A.2d 1388, 1391 (D.C. 1977)). At the same time, Congress sought to preserve the traditional right of citizens to have arms in their homes and other land belonging to them. *Billinger v. United States,* 425 A.2d 1304, 1305 (D.C.1981). This court views these exceptions narrowly, as exempting only those instances of firearm possession which are linked to a possessory interest in real property. *See, id.* at 1306, 425 A.2d 1304. To do otherwise would defeat the purpose of the law, which is to restrict the flow and use of guns on the street. *Id.* An expansion of the exceptions for lawful possession to include the home of appellant's grandmother would be contrary to the language of the statute, case precedent and public policy.

Moreover, we are troubled that accepting the government's theory that more than one conviction may be had because the possession spanned eight hours and occurred on two successive days could lead to incongruous results and punishments disproportionate to the offense. We conclude that such results should not be permitted in the absence of a clear showing of congressional intent which is not present here. *See United States v. Alexander,* 152 U.S.App.D.C. 371, 378–82, 471 F.2d 923, 930–34, *cert. denied,* 409 U.S. 1044, 93 S.Ct. 541, 34 L.Ed.2d 494 (1972).

---

1. The pertinent section of that statute reads as follows:

   No person shall within the District of Columbia carry either openly or concealed on or about his person, except in his dwelling house or place of business or on other land possessed by him, a pistol, without a license therefor issued as hereinafter provided, or any deadly or dangerous weapon capable of being so concealed. [D.C.Code § 22–3204 (1981).]

Accordingly, the judgment of the trial court is affirmed except that we vacate one of the two convictions for violation of D.C. Code § 22–3204 (1981).[2]

*So Ordered.*

---

**2.** We note that a remand for resentencing is not necessary. The trial judge believed that only one offense of carrying a pistol without a license was indicated by the evidence and stated that he would impose the sentence accordingly. Appellant received a unitary sentence of twelve years. Appellant is not now requesting resentencing, but only that the one count be vacated.