James L. WILSON, Appellant,

v.

UNITED STATES, Appellee.

No. 89–1503.

District of Columbia Court of Appeals.

Argued Feb. 14, 1991.
Decided May 8, 1991.

Richard Seligman, appointed by this
court, Washington, D.C., for appellant.

Thomas G. Connolly, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher and Heidi M. Pasichow, Asst. U.S. Attys., were on the brief, Washington, D.C., for appellee.

Before ROGERS, Chief Judge, and TERRY and SCHWELB, Associate Judges.

ROGERS, Chief Judge:

Appellant James L. Wilson appeals the denial of his motion to dismiss Count III of an indictment charging him with possession of a prohibited weapon, D.C.Code § 22–3214(a) (1989), on the grounds that it violates the Double Jeopardy and Due Process Clauses of the Fifth Amendment in view of an implicit plea agreement not to prosecute. We find no merit to appellant's Double Jeopardy claim in view of the trial judge's findings that the offense charged in Count III was a different offense from that to which appellant had previously pled guilty. We further hold that we lack jurisdiction to consider appellant's plea agreement contention as an interlocutory collateral order.

I

On February 15, 1989, appellant pleaded guilty to assault with intent to rob and possession of a dangerous weapon (sawed-off shotgun) in connection with an alleged robbery on October 23, 1988. He was sentenced to consecutive terms of forty months to ten years for assault and twenty months to five years for possession. Thereafter, on May 9, 1989, appellant was indicted for first degree murder while armed, D.C.Code §§ 22–2401, –3202 (1989), and possession of a prohibited weapon (sawed-off shotgun), *id.* § 22–3214(a) (1989), on September 6, 1988. Appellant filed a pretrial motion to dismiss Count III of the indictment on the ground that it violated the Double Jeopardy clause, since the same weapon had been involved in the charges to which he had entered a plea and the government had implicitly promised at the time of his plea that it would not prosecute him further for possession of the sawed-off shotgun.

In support of his motion to dismiss, appellant maintained that on February 15, 1989, the prosecutor had proffered, in connection with the government's effort to introduce evidence of appellant's prior possession, that the government would present evidence of Lloyd Breece, who would testify that prior to September 6, 1988, he had sold the weapon to appellant, and the prosecutor had conceded that the same weapon was involved in Count III of the indictment. The government filed an opposition, not disputing appellant's claims regarding its proffer and concession, but arguing, citing *Bruce v. United States*, 471 A.2d 1005, 1007 (D.C.1984), that it could prove that there were several discrete periods of time between September 6, 1988, and October 23, 1988, when appellant had relinquished possession of the gun, and therefore his possession was not continuous between the two offense dates. In his reply, appellant agreed that the trial judge should focus on whether appellant was in continuous possession, actual or constructive, between those two dates. Following a hearing, the trial judge found that possession had not been continuous because appellant had relinquished possession to a third party for an extended period of time, and ruled that two separate possessory offenses were therefore properly charged. The judge also found no evidence of a promise by the government not to prosecute appellant further for possession of the sawed-off shotgun on September 6, 1988, if he pleaded guilty to its possession on October 23, 1988.

Appellant noted an appeal from the denial of his motion to dismiss, and now contends that his guilty plea to the October 23, 1988, weapons offense bars, on double jeopardy grounds, his prosecution for possession of the same weapon on September 6, 1988. He also contends that his plea agreement with the United States Attorney "implicitly" included the promise that no additional weapons charges would be brought. Finally, he maintains that the trial judge erred in finding, on the basis of speculative evidence, that he was not in actual and constructive possession of the gun between the two offense dates. The government

responds that appellant's Double Jeopardy claim is meritless and that the court lacks jurisdiction to hear appellant's pendent claim regarding violation of his plea agreement on interlocutory appeal.

## II

■■■ The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." Thus, it protects a person against being prosecuted a second time for an offense of which he has previously been convicted, and thereby prevents a court from exceeding its legislative authority by imposing multiple punishments for the same offense. *Brown v. Ohio,* 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977). The test most frequently employed for determining when two separately charged offenses are actually the same offense was first enunciated in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). In *Blockburger,* the Supreme Court held that if one transaction violates two statutory provisions, two offenses will be found to have been committed if each requires proof of a fact which the other does not. *Id.* at 304, 52 S.Ct. at 182; *see Brown, supra,* 432 U.S. at 165, 97 S.Ct. at 2225. Even where this test is met, however, no multiple prosecutions will be allowed "where the second prosecution requires the relitigation of factual issues already resolved by the first." *Id.* at 166–67 n. 6, 97 S.Ct. at 2226 n. 6. As the Supreme Court has recently stated:

> [T]he Double Jeopardy Clause bars any subsequent prosecution in which the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted.

*Grady v. Corbin,* —— U.S. ——, 110 S.Ct. 2084, 2093, 109 L.Ed.2d 548 (1990).

■■■ Determining whether a course of conduct involves one or several offenses turns on legislative intent. *Id.,* 110 S.Ct. at 2091; *Brown, supra,* 432 U.S. at 165 & 169 n. 8, 97 S.Ct. at 2225 & 2227 n. 8; *accord,*

*Parker v. United States,* 476 A.2d 173, 176 & 177 n. 2 (D.C.1984); *Bruce, supra,* 471 A.2d at 1007. Thus, while the prosecutor may not arbitrarily create separate offenses by dividing a continuous course of conduct into separate units of space and time and charging a different offense for each, *Brown, supra,* 432 U.S. at 169, 97 S.Ct. at 2227, it is clear that the legislature may authorize such treatment by declaring, for example, that a new offense accrues with each day a prohibited weapon or a stolen car is unlawfully possessed. *See Brown, supra,* 432 U.S. at 169 n. 8, 97 S.Ct. at 2227 n. 8; *Parker, supra,* 476 A.2d at 177 n. 2.

The court held in *Bruce, supra,* that continuous possession of a pistol for eight hours over a two-day period was a single offense under D.C.Code § 22–3204 (1981). The court viewed the offense of carrying a weapon under D.C.Code § 22–3204 as continuous, suggesting that a new offense does not occur until the defendant either relinquishes possession of the weapon or returns to a place where he may lawfully possess it, and subsequently reasserts possession. 471 A.2d at 1007. The court rejected the government's contrary view, that the offense was not continuous, out of a concern that, in the absence of clear legislative intent, such a view could allow the imposition of widely varying punishments for similar offenses. *Id.*

The only difference between *Bruce* and the instant case is that *Bruce* involved a weapons offense in which a weapon could be lawfully possessed in an individual's "dwelling house or place of business or on other land possessed by him." D.C.Code § 22–3204. Thus, returning to a place where possession was lawful acted as a break in the continuity of possession in the same way that relinquishing a weapon would interrupt that continuity in the case of a weapon that could not under any circumstances be lawfully possessed. The logic of the analysis in *Bruce* therefore applies with equal force to D.C.Code § 22–3214(a), which makes possession of a prohibited weapon (sawed-off shotgun) unlawful wherever it occurs. Contrary to

appellant's contention, we do not view the decision in *Bruce* as turning on the language of the particular statute at issue in that case; the statutory exception for possession of a gun in one's home has been narrowly construed, *see Logan v. United States*, 402 A.2d 822 (D.C.1979); *Worthy v. United States*, 420 A.2d 1216, 1218 (D.C. 1980) (ordinarily, purpose of possession is irrelevant); *Brown v. United States*, 66 A.2d 491, 493 (D.C.1949) (statute barring the carrying of a pistol must be strictly construed), and the statute makes no reference to breaks in the continuity of possession.[1] In cases where possession at any time is prohibited, the court must still consider whether possession was continuous, in which event only one offense is properly charged, or whether possession was interrupted and resumed, in which event each resumption of possession would signal the start of a new possessory offense. *See Allen v. United States*, 580 A.2d 653, 657 (D.C.1990).

■ The trial judge credited the testimony of the government's witness (Mr. Breece) to the effect that appellant was not in continuous possession of the sawed-off shotgun between the September 6, 1988, murder and the October 23, 1988, robbery, having relinquished possession of the gun for more than two weeks to another man, who took the gun to southern Maryland. The judge relied on *Bruce, supra,* and *Curry v. United States*, 520 A.2d 255, 264 (D.C.1987) (constructive possession shown when accused has some appreciable ability to guide destiny of object). Although appellant argues that Breece's testimony was based on speculation as to whether appellant retained the ability to control the destiny of the sawed-off shotgun when it was outside his actual physical control, we defer to the trial court's determination of

credibility. *Nche v. United States*, 526 A.2d 23, 24 (D.C.1987). Accordingly, we hold that there was evidence to support the trial judge's findings and that they are not clearly erroneous. *Derrington v. United States*, 488 A.2d 1314, 1323 (D.C.1985), *cert. denied*, 486 U.S. 1009, 108 S.Ct. 1738, 100 L.Ed.2d 201 (1986); *United States v. Warren*, 373 A.2d 874, 876 (D.C.1977). Because the trial judge found that appellant took possession of the shotgun on two separate occasions, the decision to charge appellant with possession of a prohibited weapon with regard to the first occasion was not barred by double jeopardy as a result of his guilty plea in connection with the second occasion.

### III

■ Appellant's second contention is that "implicit" within his plea agreement with respect to the October 23, 1988, charges was the government's promise not to bring additional charges against him regarding his prior possession of the sawed-off shotgun. He maintains, therefore, that his due process rights were violated when the government thereafter indicted him for possession of the same sawed-off shotgun on September 6, 1988. The government responds that this issue is not appropriately before us because claims pendent to a double jeopardy claim may not be raised on interlocutory appeal and the claim itself does not fit within the narrow exception to the collateral order doctrine expressed in *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).

■ In allowing interlocutory appeals from the denial of motions to dismiss charges which are grounded in double jeopardy claims, the Supreme Court made clear

---

1. Nor are we persuaded by appellant's suggestion that in *Brown* and *Parker* the court rejected the government's argument that a break in the continuity of possession created a new crime. In *Brown,* possession of the stolen car was continuous, and hence the court concluded that only one offense was properly charged. 432 U.S. at 169–70, 97 S.Ct. at 2227. *Parker* explicitly followed the holding in *Brown*, concluding that, in the absence of legislation making each

day of unlawful use a separate offense, the defendant could be convicted of only one offense for the course of conduct involved in stealing a car and using it unlawfully on subsequent occasions. Neither case suggests that a break in continuity (for example, if the defendant relinquished possession of the car, only to steal it a second time) would not have triggered a second chargeable offense.

that other claims, pendent to the double jeopardy claim and offering other grounds for dismissal of the disputed charges, would not be immediately appealable. *Abney v. United States,* 431 U.S. 651, 663, 97 S.Ct. 2034, 2042, 52 L.Ed.2d 651 (1977). The court stated that unless such restrictions were imposed an incentive would be created for parties to lodge frivolous double jeopardy claims in order to seek immediate review of more substantive challenges. *Id.* Thus, for a claim to be assertable on interlocutory appeal, it must meet the requirements for an exception to the collateral order doctrine. As applied in criminal cases, these requirements are: (1) that the contested order will fully dispose of the disputed issue, (2) that the issue thus resolved is separate from and collateral to the merits, (3) that the appeal involves important rights which will be irretrievably lost unless an immediate appeal is allowed. *United States v. MacDonald,* 435 U.S. 850, 858–60, 98 S.Ct. 1547, 1551–52, 56 L.Ed.2d 18 (1978) (refusing to allow immediate appeal of denial of a motion to dismiss an indictment on speedy trial grounds). This court has adopted this analysis. *Stein v. United States,* 532 A.2d 641, 643 (D.C. 1987), and cases cited.

The question whether a claim that a prosecution is a violation of an implicit plea agreement not to prosecute may be asserted in an interlocutory appeal is a question of first impression for this court. There is a split of opinion among the federal circuit courts of appeals. Four circuits have held that the denial of such challenges may not be immediately appealed, on the rationale that appropriate redress for violation of an agreement not to prosecute is available on direct appeal and that such an appeal affords the court a better opportunity to determine whether the claim brought was actually identical to any claim barred by the plea agreement, in light of the evidence presented at trial.[2] By contrast, the Second Circuit has held that an order denying a "colorable claim" to dismiss an indictment for violation of a plea agreement is immediately appealable where it is clear that "the defendant asserts a right to be free of the burdens of a trial and not simply those flowing from a conviction."[3]

This court has held that an immediate appeal will lie from an order denying a claim that a person is immune under a statute from prosecution. *Stein, supra,* 532 A.2d at 644 (right to avoid prosecution cannot be vindicated after trial, applying D.C.Code § 6–2375(a) "preclud[ing]" arrest and prosecution" of persons who voluntarily surrender firearms). Our conclusion

2. *John Doe Corp. v. United States,* 714 F.2d 604, 606 (6th Cir.1983) (denial of injunction to prevent return of indictment contrary to plea agreement since corporation's interests in not standing trial and suffering adverse publicity from indictment are not the kind of interests that justify departure from rule against appealability of pretrial orders); *United States v. Bird,* 709 F.2d 388, 392 (5th Cir.1983) (plea agreement not to prosecute held not immediately appealable because "its essence is a promise of immunity ... from punishment," not immunity from trial, and can therefore be vindicated on appeal, placing greater value on the final judgment rule than on right to vindication before trial); *United States v. Eggert,* 624 F.2d 973, 975 (10th Cir. 1980) (denial of motion to dismiss Oklahoma indictment for breach of California plea agreement of no new indictments regarding pending investigations not immediately appealable where disputed factual issues resolved only after evidentiary hearing; court declined to follow Second Circuit's decision in *United States v. Alessi,* 536 F.2d 978 (2d Cir.1976)); *United States v. Solano,* 605 F.2d 1141, 1143 (9th Cir.1979), *cert. denied,* 444 U.S. 1020, 100 S.Ct. 677, 62 L.Ed.2d 652 (1980) (violations of plea agreement are "not strictly based upon the Double Jeopardy Clause" and hence are not immediately appealable).

3. *United States v. Abbomonte,* 759 F.2d 1065, 1071 (2d Cir.1985) (plea agreement barring prosecution is intended to preclude trial, not merely conviction); *United States v. Alessi, supra* note 2, 536 F.2d at 980–81 (due process claim based on violation of agreement not to prosecute concerns interests similar to those justifying immediate appealability of double jeopardy claims) (*Alessi I* ); *but see United States v. Alessi,* 544 F.2d 1139, 1152 (2d Cir.), *cert. denied,* 429 U.S. 960, 97 S.Ct. 384, 50 L.Ed.2d 327 (1976) (*Alessi II* ) (following *Alessi I* but noting that if issue were open in Circuit it would find lack of jurisdiction). *See also Eggert, supra,* 624 F.2d at 974–76 (interpreting *Alessi I* very narrowly); *cf. United States v. Venable,* 585 F.2d 71, 74–75 (3d Cir.1978) (extending logic of double jeopardy to claim that collateral estoppel prevented trial on charges based on facts previously determined by jury).

that such a claim fell within the narrow exception to the rule of finality rested on the plain language of the statute and acknowledged, by adopting the stringent "effectively unreviewable" standard, that the right being asserted involved the very power of the government to bring the defendant into court to answer the charge. *Id.* at 644 (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526–27, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985) (qualified immunity from suit, as distinct from "a mere defense to liability," immediately appealable since the trial judge's decision "is effectively unreviewable on appeal from a final judgment")). The court, in sum, has followed the distinction discussed by the Supreme Court between a right which must be upheld before trial, because it will otherwise probably be irretrievably lost, and a right which may be effectively upheld by reversing the result of the trial.[4] Thus, the question is whether a claim that the government is being untrue to its implicit word is similar to prosecutorial vindictiveness or instead represents a challenge to "the very authority of the Government to hale him into court to face trial." *Compare United States v. Hollywood Motor Car Co.*, 458 U.S. 263, 267–68, 102 S.Ct. 3081, 3083–84, 73 L.Ed.2d 754 (1982) (per curiam) (vindictiveness based on modification of original indictment in retaliation for exercise of right to move for venue change, held not immediately appealable); *Bird, supra*, 709 F.2d at 392 (same, since claim is a claim of immunity from punishment, not trial), *with Abney, supra*, 431 U.S. at 659, 97 S.Ct. at 2040.

The government does not contest that appellant has met the first two prongs of the *Cohen* test, and appellant maintains that the benefit of the prosecutor's implicit agreement—the avoidance of multiple trials—will be irreparably lost unless the issue can be raised in an interlocutory appeal. While the interest in "triumphing before trial" is not insignificant, the greater interest in avoiding piecemeal appeals compels a narrow reading of the exception to the rule against appeals from non-final orders when the underlying claim is based on an implicit condition in a plea agreement. In criminal cases, a balance of competing considerations makes clear why the courts have almost universally concluded that the remedy for the prosecutor's failure to live up to his or her word is dismissal of the indictment.

The analysis of the U.S. Court of Appeals for the District of Columbia Circuit in *United States v. Brizendine*, 212 U.S.App. D.C. 169, 659 F.2d 215 (1981), a decision anticipating the Supreme Court's decision in *Hollywood Motor Car Co., supra*, 458 U.S. 263, 102 S.Ct. 3081, is instructive. In concluding that a claim of prosecutorial vindictiveness could not be considered in an interlocutory appeal, *Brizendine, supra*, 212 U.S.App.D.C. at 176–77, 659 F.2d at 222–23 (dismissal of indictment is proper remedy when defendant granted immunity from prosecution), the court relied on the Supreme Court's distinction between "a right which *must* be upheld before trial, by an appellate court if necessary, and a right which *may* be upheld ... before trial," *id.* at 173, 659 F.2d at 219, citing *MacDonald, supra*, 435 U.S. at 860 n. 7, 98 S.Ct. at 1552

---

**4.** As the Supreme Court noted:

Admittedly, there is value—to all but the most unusual litigant—in triumphing before trial, rather than after it, regardless of the substances of the winning claim. But this truism is not to be confused with the quite distinct proposition that certain claims (because of the substances of the rights entailed, rather than the advantage to a litigant in winning his claim sooner) should be resolved before trial. Double jeopardy claims are paradigmatic.

Certainly, the fact that this Court has held dismissal of the indictment to be the proper remedy when the Sixth Amendment right to a speedy trial has been violated [citation omit-

ted] does not mean that a defendant enjoys a 'right not to be tried' which must be safeguarded by interlocutory appellate review. *Dismissal of the indictment is the proper* sanction when a defendant has been granted immunity from prosecution, when his indictment is defective, or usually, when the only evidence against him was seized in violation of the Fourth Amendment. Obviously, however, this has not led the Court to conclude that such defendants can pursue interlocutory appeals.

*MacDonald, supra*, 435 U.S. at 860 n. 7, 98 S.Ct. at 1552 n. 7 (citations omitted).

n. 7, *see* note 4, *supra.* Weighing in favor of the unavailability of an immediate appeal was the fact that the claim at issue involved disputed facts, as distinct from a question of law; that verbatim records of plea negotiations are typically unavailable; the likelihood of "open[ing] the door to interlocutory appeals in a high proportion of criminal cases," since a defendant's due process claims would be indistinguishable from "countless other allegations of unfairness in the plea bargaining process"; the chilling of the plea bargaining process; and the generally disruptive effect of such appeals on "the efficiency of the criminal justice system and the social interests in speedy trials." *Id.,* 212 U.S.App.D.C. at 175–77, 659 F.2d at 224–26 (noting in particular the "disruptive consequences" in the Ninth Circuit which had allowed interlocutory appeals for claims of prosecutorial vindictiveness).

The same considerations are persuasive in the instant case. Appellant's reliance on an implicit condition of a plea agreement practically assures the existence of a disputed factual claim that may well best be resolved after a trial. *See Eggert, supra,* 624 F.2d at 975; *cf. MacDonald, supra,* 435 U.S. at 861, 98 S.Ct. at 1553. He is already facing trial on a murder charge which involves the sawed-off shotgun. The effect of his claim is that, because he "reasonably expected that he would not be charged with multiple counts of possession of a prohibited weapon between the date of his receiving the weapon and the date of his arrest with the weapon," his trial should be narrowed so he will not have to defend the weapons charge. This is unlike a claim described in *Cohen, supra,* 337 U.S. at 546, 69 S.Ct. at 1225, which fell within "that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, *too important to be denied review and too independent of the cause itself* to require that appellate consideration be deferred until the whole case is adjudicated" (emphasis added). Nor is it within the scope of an "effectively unreviewable" claim of *Mitchell v. Forsyth, supra,* 472 U.S. at 526–27, 105 S.Ct. at 2815–16, adopted by this court in *Stein, supra,* 532 A.2d at 644. Thus, as

the government suggests, the interest asserted by appellant is not of the same magnitude as that in *Abney, supra,* 431 U.S. 651, 97 S.Ct. 2034 (double jeopardy), *Helstoski v. Meanor,* 442 U.S. 500, 99 S.Ct. 2445, 61 L.Ed.2d 30 (1979) (Congressional privilege based on speech and debate clause of the Constitution) and *Stein, supra,* 532 A.2d 641 (statutory immunity from arrest and prosecution), where the defendants claimed the government had no power to bring them to trial.

Accordingly, we conclude that since appellant has failed to assert a right that "he was entitled to be free of any [ ] trial whatever," *Hollywood Motor Car Co., supra,* 458 U.S. at 268, 102 S.Ct. at 3084, he has failed to meet the third prong of the *Cohen,* test and this court is without jurisdiction to entertain the appeal from the denial of his motion to dismiss Count III of the indictment for violation of an implicit agreement not to prosecute.

*Affirmed in part; dismissed in part.*