L.Ed.2d 705 (1967), which the government concedes to apply here.

**In re A.L.M., Appellant.**

**No. 90–FS–912.**

District of Columbia Court of Appeals.

Argued May 7, 1991.
Decided Sept. 23, 1993.

Anthony S. Haughton, Public Defender Service, with whom James Klein, and Page Kennedy, Public Defender Service, were on the brief, for appellant.

Edward E. Schwab, Asst. Corp. Counsel, with whom John Payton, Acting Corp. Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corp. Counsel, were on the brief, for appellee.

Roy W. McLeese, III, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty. at the time the brief was filed, and John R. Fisher, Asst. U.S. Atty., were on the brief for the U.S. as amicus curiae.

Before SCHWELB and WAGNER, Associate Judges, and PRYOR, Senior Judge.

WAGNER, Associate Judge:

Following a trial by the court, appellant, A.L.M., was adjudicated a delinquent after a finding that he was guilty of felony murder, armed robbery, carrying a pistol without a license, and possession of an unregistered gun and ammunition. He argues for reversal on the grounds that the trial court erred in denying his motion to suppress statements related to these offenses which he made during custodial interrogation three weeks after he was appointed counsel in a prior proceeding for an unrelated traffic offense. Appellant also contends that the affidavit supporting the custody order for his arrest included false information and material omissions, thereby requiring suppression of his statements as the fruit of his illegal arrest. We conclude that appellant's representation by counsel at the prior judicial proceeding on one charge did not invalidate his subsequent waiver of *Miranda*[1] rights made during police-initiated interviews concerning the charges in this case. We further conclude that the challenged affidavit was sufficient to support probable cause even when supplemented by the asserted omissions. Therefore, we affirm.

## I.

A.L.M., who was then fourteen years old, was arrested on November 12, 1989 for driving without a permit. Three other young men were in the car at the time, none of whom had a license to drive. Therefore, the police decided to impound the car and requested all of the occupants to get out of the vehicle. As they got out of the car, the police observed and recovered a pistol from the floor of the vehicle, directly in front of where one passenger had been seated in the right rear seat. The next day, the government filed a petition formally charging A.L.M. with the no-permit offense, and the court appointed counsel to represent him. Although appellant and the others in the vehicle had also been charged with carrying a pistol without a license at the time of the arrest, the government did not charge appellant with any weapons offense when the case was petitioned.[2]

Several days earlier, on November 5, 1989, Harrison Thompson was the victim of a robbery and a shooting which caused his death a few days later. The police ascertained from ballistic tests that the pistol recovered from the vehicle appellant was driving on November 12th was the murder weapon. Another juvenile, C.E.J., gave a statement to the police indicating that he knew A.L.M. from the neighborhood, that he had heard A.L.M. and another individual discussing a plan to rob the victim, and

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. The filing of a petition is the formal way of initiating judicial action against a minor child in order to charge delinquency based on criminal conduct. *See* D.C.Code § 16–2305 (1989).

that thereafter he saw appellant shoot the victim during the ensuing robbery. C.E.J. also informed the police of the street location where A.L.M.'s mother lived and the general area where A.L.M. lived with his grandmother. A detective from the homicide branch of the Metropolitan Police Department included all of this information in an affidavit in support of a custody order for appellant's arrest, which the court issued on November 28, 1989.[3] The detective did not include in the affidavit that C.E.J. had been a suspect in the case also. After the police informed appellant's mother of the outstanding custody order, she took him to a police station where he was arrested. While in custody appellant waived his *Miranda* rights and gave incriminating statements about the murder and robbery, including a videotaped statement.

A.L.M. filed a motion to suppress tangible evidence and statements.[4] Following an evidentiary hearing on the motion, during which the trial court viewed appellant's videotaped statement, the trial court denied the motion. The court concluded that the omission of C.E.J.'s suspect status from the affidavit was insufficient to undermine the grounds for probable cause and that probable cause would have been established even if the information had been included.[5] The trial court also found that respondent had been fully advised of his *Miranda* rights, understood them, and waived those rights voluntarily and in writing. The court rejected appellant's claim

that his Sixth Amendment right to counsel was violated by the police-initiated interrogation of him after he had been appointed counsel in the earlier petitioned no-permit case.

## II.

Appellant argues that the trial court erred in denying the motion to suppress the statements he made during police-initiated custodial interrogation because it occurred after he had accepted counsel in the no-permit case. He contends that the appointment of counsel in the no-permit case amounted to an invocation of his Fifth and Sixth Amendment right to counsel for any subsequent prosecutions, whether related or unrelated to the no-permit charge. Therefore, appellant argues, there could be no valid waiver for any police questioning subsequently initiated.[6] The District of Columbia contends that the decisions upon which appellant relies do not support his position under the circumstances of this case. Specifically, the District and the United States of America[7] contend that the appointment of counsel in the first proceeding does not constitute an affirmative invocation of the right to counsel for unrelated offenses in the second proceeding. Even assuming that it did, they argue, the invocation would no longer be effective since appellant was not held in police custody continuously after presentment on the initial no-permit charge. Appellant counters that the two cases were inextricably intertwined, and therefore, assertion of the

---

3. Upon application supported by testimony or affidavit of a law enforcement officer, the Superior Court may issue an order for a child to be taken into custody if satisfied that the application states grounds therefor under D.C.Code § 16–2309. *See* Super.Ct.Juv.R. 4. It appears that the custody order in this case was issued prior to petitioning. For the procedure involved for an order for custody when a petition is filed, *see* Super.Ct.Juv.R. 9.

4. The motion was amended at trial to include a challenge to the admission of statements under *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

5. The court observed that it would not be unusual for a case to be made upon the testimony of a co-defendant or a co-respondent.

6. Appellant does not contend that he ever requested counsel or declined to answer questions without counsel being present. Therefore, our consideration of the issues raised on appeal focuses only on the effect of appellant's invocation of the right to counsel flowing from his representation by counsel at the hearing on his no-permit charge.

7. Although the United States is not directly involved in this case, because the issues raised by appellant have significant implications for numerous cases prosecuted by it, it filed a brief as *amicus curiae* addressing these particular issues.

right in the first case extends automatically to cover the second.

The Supreme Court's decision in *McNeil v. Wisconsin*, — U.S. ——, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991) resolves a number of these issues.[8] Therefore, we recount in some detail the facts and the holding of the case. After McNeil's arrest for an armed robbery in West Allis, Wisconsin, he was advised of his *Miranda* rights, and he declined to answer questions about the case. However, McNeil did not request counsel. Subsequently McNeil was represented by counsel at the initial bail hearing in the West Allis case. While still in jail, the police questioned him several times about an unrelated murder, attempted murder, and burglary which occurred in Caledonia, Wisconsin. Before each interview, the police advised McNeil of his *Miranda* rights, including the right to counsel, and he waived them. Thereafter, he made inculpatory statements about the crimes in Caledonia. The trial court denied McNeil's motion to suppress the statements, and he was ultimately convicted of second-degree murder and armed robbery. The Wisconsin Court of Appeals certified a question raised by appellant's appeal to the Wisconsin Supreme Court, which had not previously addressed the issue. In responding to the certified question, the Wisconsin Supreme Court held that an accused's request for counsel at an initial appearance on a charged offense does not constitute an invocation of his Fifth Amendment right to counsel so as to preclude police interrogation on unrelated and uncharged offenses. *Id.* — U.S. at ——, 111 S.Ct. at 2207.

 The Supreme Court affirmed, holding that the accused's invocation of the Sixth Amendment right to counsel is offense-specific and therefore, cannot be considered to be an invocation of the Fifth Amendment right to counsel for all future prosecutions.[9] *Id.* The court acknowledged the principle extracted from *Michigan v. Jackson*,[10] that once the Sixth Amendment right of the accused to counsel for his or her criminal defense has attached and been invoked, any subsequent waiver of such rights in any police-initiated, custodial interview is without effect. *McNeil, supra,* — U.S. at ——, 111 S.Ct. at 2207. However, the Supreme Court rejected McNeil's argument that the rule applies for subsequently charged, unrelated offenses. *Id.* In this regard, the Court stated that "just as the [Sixth Amendment] right is offense-specific, so also its *Michigan v. Jackson* effect of invalidating subsequent waivers in police-initiated interviews is offense-specific." *McNeil,* — U.S. at ——, 111 S.Ct. at 2207. Therefore, observing that McNeil had provided the statements before his Sixth Amendment right to counsel for the subsequently investigated offenses could have been invoked, the court held that McNeil's representation by counsel in the earlier, unrelated criminal proceeding presented no bar to admission of the statements concerning the subsequently prosecuted offenses. *Id.* — U.S. at ——, 111 S.Ct. at 2208.

The Supreme Court specifically rejected McNeil's argument for combining the invocation of his Sixth Amendment right to counsel with the non-offense specific rights under *Miranda*. *McNeil, supra,* — U.S. at ——, 111 S.Ct. at 2208. McNeil claimed that although he had waived expressly his *Miranda* right to counsel every time he was questioned about the Caledonia offenses, the waivers were invalid because of his prior invocation of the Sixth Amendment right to counsel in the criminal prosecution for the West Allis offenses. *Id.* For this argument, McNeil relied on *Ed-*

---

8. The *McNeil* decision was rendered after the filing of the briefs and oral argument in this case. Pursuant to D.C.App.R. 28(k), *amicus curiae* filed with the court notification of the entry of the decision.

9. The Sixth Amendment provides the accused with the right to the assistance of counsel for his defense in all criminal prosecutions. *Michigan v. Jackson*, 475 U.S. 625, 106 S.Ct. 1404, 89

L.Ed.2d 631 (1986). The Fifth Amendment, which protects the accused from self-incrimination, includes the prophylactic right to have counsel present during custodial interrogation. *Miranda, supra,* 384 U.S. at 475, 86 S.Ct. at 1628.

10. 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986).

*wards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), which established the rule that once a suspect asserts his *Miranda* right to counsel for one offense, he or she may not be questioned about that offense or any other unless counsel is present. *Id.* 451 U.S. at 484–85, 101 S.Ct. at 1884–85. The Supreme Court held as a matter of fact and policy that invocation of the offense-specific Sixth Amendment right to counsel does not invoke the non-offense-specific *Miranda–Edwards* right. *McNeil,* —— U.S. at ——, 111 S.Ct. at 2208–09. Therefore, the court held that McNeil's *Miranda* waiver with respect to the Caledonia crimes was effective.

▬▬▬ Before undertaking an analysis of the facts of this case in light of the Supreme Court's decision in *McNeil,* we address a preliminary point made by amicus. Although appellant here bases his claim, in part, on the protections afforded under the Sixth Amendment, the guarantees under this amendment do not apply directly to juvenile adjudications of delinquency. *McKeiver v. Pennsylvania,* 403 U.S. 528, 541, 91 S.Ct. 1976, 1984, 29 L.Ed.2d 647 (1971); *In re C.B.N.,* 499 A.2d 1215, 1218 n. 3 (D.C.1985). However, juvenile respondents have a right to counsel based on the due process protection afforded by the Fifth Amendment. *See In re Gault,* 387 U.S. 1, 41, 87 S.Ct. 1428, 1451, 18 L.Ed.2d 527 (1967). In this jurisdiction, by statute a child alleged to be delinquent is entitled to counsel at all critical stages of proceedings before the Family Division of the Superior Court. D.C.Code § 16–2304 (1989); *see also* Super.Ct.Juv.R. 44(a) (in delinquency proceedings, representation of a child by counsel is mandatory at all hearings after filing of the petition). For purposes of the disposition of this case, we assume for the sake of argument that these protections which are accorded juveniles are coextensive with the rights reserved to defendants in criminal prosecutions.[11] The facts in the McNeil case are otherwise similar to the facts presented here in significant respects.

A.L.M. was represented by counsel when the no-permit case was petitioned and prior to the time the police questioned him about the murder. Therefore, like McNeil, he had invoked any right to counsel comparable to that derived from the Sixth Amendment by the time of the police-initiated contact with him on the murder charge. *See Dew v. United States,* 558 A.2d 1112, 1116 (D.C.1989) (appointment of counsel amounts to a request for counsel which invokes Sixth Amendment bar to police-initiated interrogation without counsel present); *accord, Woodson v. United States,* 488 A.2d 910, 912 (D.C.1985). Also like McNeil, appellant waived his *Miranda* rights before giving the incriminating statements about the murder, which were the subject of the motion to suppress. Under *McNeil* the acceptance of appointment of counsel on a prior unrelated charge would not serve to invoke *Miranda–Edwards* rights. *McNeil, supra,* —— U.S. at ——, 111 S.Ct. at 2209. Thus, it would seem that the same result which obtained in *McNeil* should follow here.

However, appellant contends that the two cases against him involved here are not unrelated. He argues that a relationship arises from the fact that he was arrested initially at the time of the no-permit offense for possession of the murder weapon. Although appellant was not charged by formal petition for any weapons offense at the time the no-permit charge was petitioned, appellant contends that he was charged in essence with the same weapons offense when the murder case was petitioned.[12] The District of Columbia and

---

11. Therefore, we couch our discussion in terms of the Sixth Amendment.

12. Appellant also contends that the continuous nature of a weapons offense requires the conclusion that the offenses are related. *See Bruce v. United States,* 471 A.2d 1005, 1007 (D.C.1984) (the offense of carrying of a weapon is continuous). We reject this argument. In *Bruce,* the appellant argued successfully that one of his two convictions for carrying a pistol without a license should be vacated because he carried the pistol without interruption over an eight hour period. *Id.* at 1007. The charges arose from two shootings which occurred eight hours apart. *Id.* at 1006. Since a second offense for possession of the weapon does not arise until the continuity of the act is broken (*e.g.,* by taking it to a place where it could be lawfully possessed),

amicus respond that the requisite nexus is not made out and that assuming such a relationship, it is so attenuated as not to fall within the strictures of any rule against prohibited police questioning.

At the time the police questioned appellant about the murder and robbery offenses, the only offense with which A.L.M. had been charged and for which the Sixth Amendment-type right to counsel could have attached was the no-permit offense which had occurred on a different date. As to the no-permit offense, unquestionably appellant's invocation of the right to counsel precluded the police from initiating and eliciting statements from him about that offense, and any statements with respect thereto would be inadmissible at trial in the government's case in chief. *Maine v. Moulton,* 474 U.S. 159, 180, 106 S.Ct. 477, 489, 88 L.Ed.2d 481 (1985). On the other hand, "[i]ncriminating statements pertaining to other crimes as to which the Sixth Amendment right has not yet attached, are, of course, admissible at a trial of those offenses." *Id.* at 180 n. 16, 106 S.Ct. at 489 n. 16. Appellant concedes that the government ordinarily is not precluded from obtaining such statements if they relate to a separate offense. However, appellant contends that the rule applies only if the offenses are totally unrelated.

█ Such a broad interpretation of the rule is not supportable by pertinent authorities. On the contrary, *Moulton* makes clear that the exclusionary rule for a Sixth Amendment violation extends only to evidence related to the charges to which the right to counsel had attached. *Id.* at 180, 106 S.Ct. at 489. The Court explained the point this way:

> On the other hand, to exclude evidence pertaining to charges as to which the Sixth Amendment right to counsel had not attached at the time the evidence was obtained, simply because other charges were pending at that time, would unnecessarily frustrate the public's interest in the investigation of criminal activities. Consequently, incriminating statements pertaining to pending charges are inadmissible at the trial of those charges, notwithstanding the fact that the police were also investigating other crimes, if, in obtaining this evidence, the State violated the Sixth Amendment by knowingly circumventing the accused's right to the assistance of counsel.

*Id.;* [13] *see also Hoffa v. United States,* 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966) (violation of Sixth Amendment right related to charges in first trial does not require suppression of the statements at later trial involving appellant's efforts to bribe juror at the first trial). Decisions from federal and state courts also support the conclusion that the Sixth Amendment right to an attorney and the exclusionary rule for its violation by governmental authorities is specific to the offenses related to the charged offense. *See, e.g., Alexander v. Connecticut,* 917 F.2d 747, 751 (2d

we held on the facts in *Bruce,* that the defendant had not broken the continuity of possession so as to justify two convictions under the same statute for possession of the same weapon. *Id.* Appellant has cited no basis in the record to support the conclusion that the presence of the weapon in the vehicle he drove on November 12, 1989 was an uninterrupted continuation of his possession of it from the time he shot the victim on November 5, 1989. The weapons offenses for which he was convicted relate only to appellant's possession of the weapon and ammunition used on November 5, 1989. Therefore, we find no support in *Bruce* for appellant's argument that the weapons offenses on each of the two dates constituted the same offenses.

13. In *Moulton,* the Supreme Court held that a defendant's Sixth Amendment right to counsel had been violated by the admission at trial of incriminating statements made by Moulton to a government informant, his co-defendant, at a meeting the government arranged which it knew was for the express purpose of a discussion of trial strategy by the two men on pending theft and related charges. *Id.* at 176–77, 106 S.Ct. at 487–88. The government was also investigating whether appellant planned to kill a government witness, and appellant made admissions in this regard. *Id.* at 162–63, 106 S.Ct. at 480–81. During the course of the conversations, appellant discussed a plot to kill a government witness. *Id.* at 165, 106 S.Ct. at 481. Implicit in the Supreme Court's ruling is that statements involving the murder plot would not be excludable under its holding. *Id.* at 180 & n. 16, 106 S.Ct. at 489 & n. 16. Yet, there exists some connection between the offenses in *Moulton.*

Cir.1990); *United States ex rel. Espinoza v. Fairman,* 813 F.2d 117, 120–22 (7th Cir. 1987); *United States v. Chu,* 779 F.2d 356, 367–68 (7th Cir.1985); *People v. Buckles,* 155 Mich.App. 1, 399 N.W.2d 421, 423–24 (1986).

In this case, the only link between the no-permit charge and the murder and robbery case is that the murder weapon was discovered in the vehicle appellant was driving just prior to his arrest which resulted in the no-permit petition. While the charges the police made at the time of arrest included weapons violations for appellant's alleged possession of the gun that day, these charges were not included in the petition when appellant was charged and appointed counsel. It is only at that time that it can be deemed that appellant's right to counsel was invoked and attached and police-initiated inquiry on matters related to the no-permit charge would be precluded in the absence of counsel. *Jackson, supra* note 10, 475 U.S. at 636, 106 S.Ct. at 1411. The weapons offenses were not included in the prosecution at that time, and the right to counsel for a defense could not attach where no prosecution existed. *See McNeil, supra,* —— U.S. at ——–——, 111 S.Ct. at 2207–08.

Although there may be circumstances where the offense of arrest and an uncharged offense may be so interrelated that interrogation under these principles would preclude questioning on the uncharged offense, we do not find that nexus here. Evidence that a weapon had been recovered when appellant was arrested had no relevancy to the no-permit offense. The fortuity that the murder weapon for crimes committed earlier by appellant, yet unknown to the police, was recovered from appellant's vehicle and could be used as evidence in a subsequent trial does not alter the fact that the two criminal incidents involved separate crimes. *See Espinoza, supra,* 813 F.2d at 121 n. 1. The uncharged weapon offense was possessory in nature and based on the recovery of the weapon on a particular night, while the weapons offenses charged in this case arise out of the unlawful use and possession of the weapon on a different date in the commission of a murder and robbery. Thus, the cases involve two distinct criminal episodes with no real connection which occurred on separate dates, and the circumstances are entirely different in every significant respect. *See id.*[14] For purposes of rights protected under the Sixth Amendment, the requisite nexus is not present here.

Exclusion of the incriminating statements pertaining to the murder charges under these circumstances is not required to meet the requirements of the Sixth Amendment right to counsel. To hold otherwise when this right to counsel had not yet attached to the offenses involved "would unnecessarily frustrate the public's interest in the investigation of criminal activities." *See Moulton, supra,* 474 U.S. at 180, 106 S.Ct. at 489. Therefore, we hold that appellant's representation by counsel at his presentment on the no-permit offense did not bar admission of his statements made during the course of police questioning about unrelated murder and weapons offenses even though the murder weapon had been recovered from a vehicle which appellant was driving on the night of the no-permit arrest.[15]

### III.

■ Appellant also argues that the trial court erred in denying his motion to suppress statements because they were the fruit of an illegal arrest brought about by a

---

**14.** Of course, any statements tending to incriminate appellant on the no-permit charge would be excludable as evidence in that case. *See United States v. Morrison,* 449 U.S. 361, 364, 101 S.Ct. 665, 667, 66 L.Ed.2d 564 (1981) (exclusionary remedies should be tailored to injury suffered from the constitutional violation).

**15.** In view of our disposition of this issue, it is not necessary for us to consider the effect of appellant's release from custody after the implicit invocation of his Sixth Amendment right to counsel and the police-initiated questioning challenged here.

custody order which was based upon an affidavit containing three material misrepresentations. These asserted misrepresentations consist of three omissions from the affidavit: (1) the suspect status of the eyewitness who provided the pertinent information; (2) that appellant was not charged formally with a weapons offense; and (3) that the murder weapon had been recovered from a vehicle in which there were three others in addition to appellant. Only the first challenge was raised in the trial court; therefore, we need not consider the last two. *See Butler v. United States*, 614 A.2d 875, 882 n. 13 (D.C.1992) (grounds not urged in the trial court need not be considered on appeal).[16] The trial court concluded that the omission of the witness' suspect status from the affidavit did not undermine the basis for probable cause set forth therein.

 When it is established that a false statement was included in a warrant affidavit, either knowingly and intentionally, or with reckless disregard for the truth, and setting aside the false material, the remaining contents of the affidavit are insufficient to establish probable cause, the warrant is void, and the fruits resulting from it must be excluded as evidence at trial. *Franks, supra* note 4, 438 U.S. at 155–56, 98 S.Ct. at 2676–77; *see also In re Y.G.*, 399 A.2d 65, 67–68 (D.C.1979). The same result obtains for material omissions. *United States v. Stanert*, 762 F.2d 775, 780 (9th Cir.1985). When omissions are involved, the defendant must show that the affidavit supplemented by those omissions would be insufficient to support a finding of probable cause. *Id.* at 782. We find no error in the trial court's determination that the addition of the witness' suspect status to the affidavit would not so undermine the reliability of the remaining information as to render it insufficient to establish probable cause.[17]

**16.** In any event, the additional asserted omissions would not alter the result.

For the foregoing reasons, the adjudications appealed from hereby are

*Affirmed.*

**17.** Assuming the materiality of C.E.L.'s suspect status, we are confident that probable cause would have been shown even if disclosure had been made.